**UNITED STATES of America, Plaintiff,**

**v.**

**Jerry Ralph ANGELL, Defendant.**

**No. CR 3–91–138(2).**

United States District Court,
D. Minnesota,
Third Division.

July 31, 1992.

Margaret Burns, Minneapolis, Minn., for plaintiff.

Douglas W. Thomson, St. Paul, Minn., for defendant.

## STATEMENT OF REASONS OF IMPOSING SENTENCE

MAGNUSON, District Judge.

### I. Findings of Fact

The probation office has conducted an extensive presentence investigation (PSI) in this matter. Rule 32, Federal Rules of Criminal Procedure, 18 U.S.C. § 3552. The court has ordered certain amendments to the report because substantial portions of the reported information is, in fact, irrelevant to Jerry Angell. The court adopts the amended PSI as its finding of fact to the extent it is not inconsistent with the court's findings below.

### II. Purposes

Defendant was found guilty by jury verdict of the following crimes: Aiding and Abetting the Manufacture of Marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and Conspiracy to Manufacture Marijuana Plants, in violation of 21 U.S.C. § 846. Drug offenses have a very harmful effect on our society; therefore, incarceration is necessary. A sentence is necessary to serve as punishment for the wrong done. The court imposes sentence as a message that those involved in marijuana growing operations will be punished. The behavior defendant engaged in should not and will not be condoned.

### III. Application of the Guidelines

██ The court makes the following findings with respect to application of the Guidelines. The base offense level for violation of 21 U.S.C. § 841(a)(1) is found in § 2D1.1(c). [D]rug quantity [is] not an element of the offense, but rather a consideration for the sentencing court. *U.S. v. Brown*, 946 F.2d 58, 61 (8th Cir.1991). The government bears the burden of proving drug quantity by a preponderance of the evidence. *U.S. v. Prescott*, 920 F.2d 139, 144 (2d Cir.1990); *U.S. v. Streeter*, 907 F.2d 781 (8th Cir.1990); *U.S. v. Simmons*, 964 F.2d 763 (8th Cir.1992). In determining the drug quantities involved, the court has conducted an independent review of the evidence and finds the following: the government agent placed 87 "plants" into separate baggies and an unspecified quantity into one additional baggie. With respect to the 87 baggies, after conducting its own inspection the court notes that at least 8, and probably more, of the baggies contain mere seedlings and therefore the contents do not constitute individual "plants." In particular, the court finds that the contents in baggies (exhibits) # 20, # 23, # 46, # 48, # 49, # 63, # 64 and # 73 are substantially less than two inches long and have no visible root structure. In *U.S. v. Curtis, et al.*, 965 F.2d 610 (8th Cir. 1992), the District Court, in calculating the number of plants for sentencing purposes, eliminated 137 "seedlings" from a total of 335 marijuana plants seized from the defendant's residence which were two inches or less in height, as well as those plants which appeared to be dead or dying. Likewise, the Ninth Circuit in *U.S. v. Corley*, 909 F.2d 359 (9th Cir.1990) affirmed the District Court's decision in *U.S. v. Graham*, 710 F.Supp. 1290 (N.D.Cal.1989) to subtract 800 seedlings from the 1,300 plants discovered by government agents to arrive at a sentencing total of 500 plants. The seedlings, in the case at hand, stand in contrast to other baggies containing identifiable plants that are more properly included in determining drug quantities. For example, the "plants" in baggies # 26, # 57, # 86 are well over two inches in height and, more importantly, have developed a significant root structure. Thus, the court finds that a total of 79 plants were contained in baggies marked # 1 through # 87.

Turning next to the 88th bag, it is not clear whether or not this bag contained more than one plant. The BCA chemist, David Tebow, testified that each of the 88 baggies contained marijuana but that he did not count the number of plants. The government agent, on the other hand, testified that this bag contained exactly 28 plants; however, the court lends little or no weight to this testimony. First, the court finds it somewhat inconsistent that government agents took the time to put each "plant" into 87 individual baggies and then simply put 28 into the 88th bag. It seems

that the government agents were most concerned with reaching the "magic" number of 100 plants, thereby "kicking in" a five year minimum mandatory sentence. *See U.S. v. Barth*, 788 F.Supp. 1055 (D.Minn. 1992) (where Judge Rosenbaum departed downward from the guidelines sentencing range due, in part, to the government's overriding concern for reaching the "magic number" to subject defendant to the mandatory minimum term of imprisonment.) Moreover, based on its own review, the court concludes that the final bag, similar to the other 79 baggies, contained not more than one identifiable plant. Thus, for sentencing purposes 80 identifiable plants were obtained from the residence. In addition to the 80 plants found at the residence, the court adds the 16 plants discovered in the field, resulting in a total of 96 marijuana plants.

The Minneapolis City Chemist indicated that during a typical growing operation the weaker plants are weeded out. This leaves the healthier plants to continue to mature. It is estimated that out of the remaining plants, approximately 90 percent of the plants would survive. Having been raised on a farm, and quite familiar with planting and growing, albeit not marijuana, the court cannot help but agree that at least 10% of the plantings will not reach maturity. This finding is supported by the decision in *U.S. v. Godwin*, 779 F.Supp. 561 (N.D.Fla.1991). In that case, the District Judge applied a 90% survival rate to 10,451 growing marijuana seedlings to arrive at a net of 9,406 "plants" for sentencing purposes. Applying a 90% survival rate to the 96 plants in our case results in 86 marijuana plants.

■ The court next must convert the number of identifiable plants into a weight equivalency. Although the guidelines indicate an equivalency of 1 kilogram per plant, testimony in this case, presented by the Government expert, calculated that each plant would produce one pound (453.6 grams) of marijuana. The court believes it most appropriate to rely on the trial testimony in this case. Using the one pound (453.6 grams) per plant ratio, multiplied by 86 plants, results in 39,110 grams or 39 kilograms of marijuana. The guidelines provide that for quantities between 20 and 40 kilograms of marijuana the offense level is 18. Finally, the court finds that, by virtue of his communication to the court, Jerry Angell has accepted responsibility and therefore awards a two point reduction, resulting in a total offense-level finding of 16 points.

Applying the guidelines to the facts, the court determines the resulting applicable guidelines to be as follows:

| | |
|---|---|
| Total Offense Level: | 16 |
| Criminal History Category: | IV (8 Points) |
| Guidelines Sentence: | 33 to 41 months |
| Supervised Release: | 3 to 5 years |
| Fine Range: | $ 5,000 to $ 2,000,000 |

---

IV. Motions for Downward Departure

The court denies the defendant's motion for downward departure.

V. Sentence

Imprisonment for 33 months

Supervised release for three years

Fine $ 0

Special Assessment of $100 ($50 per count)

VI. Surrender

Defendant is subject to mandatory detention provisions under 18 U.S.C. § 3143. The court strongly recommends the place of confinement be in the State of Minnesota.

VII. Statement of Reasons

■ The court imposes sentence within the range applicable to this defendant and

for these offenses because the facts found are the kind contemplated by the guidelines. No aggravating or mitigating circumstances exist that were not adequately considered by the Sentencing Commission. The court has, however, imposed sentence at the bottom end of the guidelines for several reasons. First, the court believes defendant was subject to unusual treatment in that the initial traffic stop occurred on May 17, 1991, yet defendant was not indicted until December 17, 1991. The court finds this delay unnecessary in this case. The court is also cognizant that had this action proceeded in the Minnesota state court system rather than the federal system, the quantity of marijuana involved would have resulted in only a petty misdemeanor conviction. While recognizing that this court is bound by the Federal Sentencing Guidelines, such disparity between state and federal prosecution is shocking.

Because defendant is indigent he is not required to pay a fine, costs of imprisonment and costs of supervision. Defendant is, however, required to pay a special assessment of $100.