**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Francis Everett FOREE and Christina Draznin, Defendants–Appellants.**

**No. 91–5020.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 9, 1995.

1574

Sheryl J. Lowenthal, Coral Gables, FL, for Christina Draznin.

Thomas White, Brenda Bryn, Federal Public Defenders, Miami, FL, for Francis Foree.

Carol Herman, Linda Collins Hertz, Michael J. Dittoe, Asst. U.S. Attys., Miami, FL, for U.S.

Before KRAVITCH and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The definition of "marihuana plant" under 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1(c) is the central issue in this case. We hold that, for sentencing purposes, cuttings and seedlings are not "marihuana plants" unless there is "some readily observable evidence of root formation."

Francis Foree was convicted by a jury of felony possession of marijuana plants with intent to distribute in violation of 21 U.S.C.

§ 841(a)(1) (Count I), felony possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d) (Count IV), and misdemeanor conspiracy to possess marijuana plants in violation of 21 U.S.C. §§ 844(a) and 846 (Count II); he was sentenced to concurrent terms of imprisonment of 97 months on Counts I and IV and 12 months on Count II. Christina Draznin, his codefendant, was convicted of misdemeanor possession of marijuana plants in violation of 21 U.S.C. § 844(a) (Count I) and misdemeanor conspiracy to possess marijuana plants in violation of 21 U.S.C. §§ 844(a) and 846 (Count II), and sentenced to concurrent prison terms of 12 months on each count. Both appeal their convictions and sentences. Although we AFFIRM the convictions,[1] we VACATE the sentences and REMAND for resentencing.

I.

The bulk of the evidence against the appellants was obtained during searches conducted on January 25, 1990, pursuant to a federal search warrant, at Foree's house, located at 3100 Virginia Street, Miami, and at a house rented to Draznin, located at 14850 Galloway Road, Miami. Execution of the warrants netted 24 mature marijuana plants, 56 cuttings, and 17 seedlings at the Virginia Street house, and 49 mature plants at the Galloway Street house. Furthermore, the searches revealed extensive indoor cultivation facilities at both locations, and a sawed-off shotgun and ammunition in a dresser drawer at Foree's house. It was also evident that no one was living permanently at the Galloway Street house.

Foree and Draznin initially challenge the district court's denial of their motion to suppress the fruits of these searches, arguing that no probable cause existed to support the issuance of the warrant. We disagree, and affirm the district court's ruling on this question.[2]

---

1. At the outset, we note that we find no merit in Foree's challenge to the sufficiency of the evidence to support his convictions, his contention that *Staples v. United States*, — U.S. —, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) requires a new trial on the unregistered firearm count, or Draznin's complaint about allegedly prejudicial

comments by the prosecutor, and do not discuss these issues further.

2. Because we find that probable cause existed, we need not address the question of whether Draznin had standing to challenge the search of the Virginia Street house or whether Foree had

The search warrant issued on the basis of an affidavit submitted by Special Agent Kenneth McCarron of the United States Drug Enforcement Agency ("DEA"). The affidavit averred that on January 24, 1990, a confidential informant ("CI") known to McCarron reported that she[3] had been to Foree's house on Virginia Street three weeks earlier and had observed an extensive indoor marijuana growing operation, and that Foree had wanted to show her a second growing location in the hope of recruiting her to tend those plants for him. Furthermore, according to the affidavit, on the afternoon of January 24, the CI, at McCarron's suggestion, went to visit Foree at his residence. After remaining inside for about five minutes, the CI exited and told McCarron that she saw about twenty small marijuana plants in separate containers under a large indoor growing light in one room of the house, and about fifty larger marijuana plants under a light in another room. A little later, the CI returned to Foree's house and, under constant police surveillance, was driven by Foree to the Galloway Road location. After a brief sojourn inside that house, the CI met with another DEA agent nearby, and told him that she observed three rooms inside the Galloway Street house that were being used to grow marijuana. The first room, according to the CI, had a big growing light and eight to ten large plants, the second had four to five lights and about thirty large plants, and the third room had three lights and also about thirty large plants. The CI also saw a number of screens in the refrigerator being used to dry the marijuana. McCarron's affidavit further noted that the CI had known Foree for five years, that the CI told McCarron that Foree was teaching her how to cultivate marijuana indoors and prepare it for distribution, and that DEA intelligence files indicated that Foree previously had been involved in unloading aircraft carrying marijuana at a clandestine airstrip in the Bahamas. Finally, McCarron averred that "[i]nformation previously provided by the CI has been corroborated by the affiant, and the CI

has been found to be truthful and accurate in other narcotics trafficking intelligence provided to your affiant and other law enforcement officers. Further, the CI has not provided information found to be misleading or untruthful."

■ The task of the magistrate issuing a warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there exists a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *see also United States v. Kirk,* 781 F.2d 1498, 1505 (11th Cir.1986) (same).

Appellants launch a two-pronged attack on the probable cause finding in this case. First, they argue that the allegations in the affidavit concerning the CI's past veracity were bare and conclusory, and did not adequately inform the magistrate's judgment. Second, appellants contend that although the DEA surveillance may have corroborated the CI's access to the residences and her ability to see what she claimed to have seen, the officers' observations in no way confirmed the substance of those reports—i.e. the presence of any marijuana plants or indoor growing paraphernalia inside either location.

■ To a limited extent, we agree with the first argument. McCarron's affidavit did not disclose whether the information previously provided by Karen Cast related to the investigation of her own narcotics-related activities or those of other persons, whether that information was important or incidental to those investigations, or whether the information resulted in any search, arrest, or conviction. *See United States v. Miller,* 753 F.2d 1475, 1480 (9th Cir.1985). Although an averment that the CI has provided reliable information in the past is preferable to a bald assertion that she is a "reliable informant," it

---

standing to challenge the search of the Galloway Street house. *See generally Rakas v. Illinois,* 439 U.S. 128, 132–38, 99 S.Ct. 421, 424–27, 58 L.Ed.2d 387 (1978).

3. The informant was later revealed to be Karen Cast, an acquaintance of the defendants who had been charged with a cocaine offense and was cooperating with law enforcement.

still "leaves the nature of that [past] performance undisclosed, so that the judicial officer making the probable cause determination has no basis for judging whether the [affiant's] characterization of [the CI's past] performance is justified"—the magistrate is still relegated, albeit in a more attenuated sense, to relying on the affiant's reliability judgment. 1 Wayne R. LaFave, *Search and Seizure* § 3.3(b) at 636 (2nd ed. 1987). The allegation of reliability in McCarron's affidavit therefore should have been "entitled to only slight weight." *Miller,* 753 F.2d at 1480.

■ Discounting the affidavit's allegation of the CI's veracity, however, does not end the analysis, for, "even if we entertain some doubt as to the informant's motives, [her] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [her] tip to greater weight than might otherwise be the case." *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330. Furthermore, under the totality-of-the-circumstances analysis announced in *Gates,* "veracity" and "basis of knowledge" are no longer viewed as independent prerequisites to a finding of probable cause: "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability" such as corroborating evidence gathered by law enforcement. *Id.* at 233, 103 S.Ct. at 2329. It is undisputed that the CI's reports to McCarron were based on detailed, first-hand observation and demonstrate an adequate "basis of knowledge." The central question, then, is whether the DEA surveillance in this case constituted sufficient corroboration of the CI's veracity to support an overall finding of probable cause.

■ Appellants' second argument goes precisely to the issue of corroboration. But although their objection is not without appeal, it is ultimately not persuasive. It would certainly have been helpful to have corroborated the presence of an indoor cultivation facility more directly, and numerous courts have upheld the finding of probable cause when such averments were included in the affidavit.[4] Nevertheless, in our view, the averments in this affidavit constituted sufficient corroboration. There are different ways for police to corroborate the CI's "veracity." Independently confirming that *what* she said is true is one way; creating circumstances under which she is unlikely to lie is another. Here the CI made her observations in the context of a controlled surveillance operation and reported intermittently to supervising officers, who corroborated her access to the target of the investigation. As her report consisted of facts readily verifiable upon a subsequent search by the police (x number of plants growing in y room), the CI was unlikely to be untruthful, for, if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly. *Accord* 1 LaFave, *supra,* § 3.3(f) at 686–87. Furthermore, the magistrate in this case could reasonably have concluded that the DEA intelligence reports about Foree's previous drug-smuggling activities in the Bahamas also corroborated the CI's veracity. *See United States v. Scalia,* 993 F.2d 984, 988 (1st Cir.1993) (corroboration may derive from second-hand information in police intelligence files).[5]

In view of the discretionary nature of the magistrate's determination, our limited task on appeal is simply to ensure that there exists a "substantial basis" for her conclusion. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. Under the totality of the circum-

---

**4.** *See, e.g., United States v. Ford,* 34 F.3d 992, 993 (11th Cir.1994) (thermal imager used to detect marijuana grow lights); *United States v. Burke,* 999 F.2d 596, 598–99 (1st Cir.1993) (electrical power consumption records at residence revealed pattern consistent with indoor marijuana cultivation); *United States v. Smith,* 783 F.2d 648, 651 (6th Cir.1986) (officer personally observed large marijuana plant growing next to house); *People v. Pannebaker,* 714 P.2d 904, 907–08 (Col.1986) (distinctive dark-plastic covering,

known to be commonly used for indoor marijuana growing, observed on windows of house).

**5.** *Cf. Burke,* 999 F.2d at 598–99 (affiant's personal knowledge of prior marijuana growing activity by same suspect corroborated finding of probable cause); *United States v. Taylor,* 985 F.2d 3, 6 (1st Cir.) (suspect's previous guilty plea for cultivating marijuana on same property corroborated finding of probable cause), *cert. denied,* — U.S. ——, 113 S.Ct. 2426, 124 L.Ed.2d 647 (1993).

stances presented before the magistrate in this case,[6] we cannot say that the finding of probable cause was without such a "substantial basis."[7]

## II.

Foree next challenges the admission of certain post-arrest statements made by his codefendant, Christina Draznin,[8] arguing that the use of these statements violated his Confrontation Clause rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Because Foree did not posit a *Bruton* objection at trial, we evaluate this claim under the "plain error" standard of review.

After Foree and Draznin were arrested together in front of the Galloway Street house, Draznin was interviewed by Metro–Dade Detectives Al Romero and Deborah Phillips. The interview was audiotaped, and the tape later transcribed by Phillips. In a series of somewhat rambling, disjointed remarks, Draznin, although never specifically naming Foree, asserted that (i) she was "emotionally" and "sexually" mesmerized by a man who drew her into the "business" of growing marijuana, in which she was an "unwilling participant" motivated by "dependency" rather than "profit," (ii) that someone else had asked her to buy the lights for indoor marijuana cultivation, and (iii) that it was somebody else's idea to move the indoor

growing operation into the Galloway Street house. By the time the government offered the tape into evidence at trial, the jury had heard testimony that: Foree had visited the Galloway Street house, rented to Draznin, the day before the arrest and opened the garage door with a remote control in his possession; the Galloway Street house contained an elaborate marijuana growing setup; the cultivation facilities and equipment at Foree's house on Virginia Street and the Galloway Street house were similar; Foree and Draznin were arrested together at the Galloway Street house; and Foree had the key to that house. There was no evidence of Draznin's romantic association with any other man. Furthermore, in his testimony prior to the introduction of the tape, Detective Romero repeatedly and unequivocally stated that, in his opinion, Draznin's remarks during the interview referred to Foree. In her closing argument, the prosecutor invited the jury to draw the same inference. Nevertheless, Foree's counsel only objected to the audibility problems on the tape, and requested a jury instruction on the appropriate use of the unofficial transcript.

Because Foree did not articulate a *Bruton* objection at trial, we review the district court's admission of this evidence for "plain error" pursuant to Fed.R.Crim.P. 52(b). As the Supreme Court recently ex-

---

**6.** We emphasize, however, that this is a close case, demarcating the outer limits of probable cause in this context. *But see United States v. Jackson*, 898 F.2d 79 (8th Cir.1990) (upholding finding of probable cause where anonymous caller claimed to have seen marijuana plants and harvested marijuana at certain location when he went to pick up his daughter, who was living with occupant of premises at the time, where sole corroboration by police was that person named by caller in fact had electrical service in his name at that location, and where external observation of the house otherwise revealed nothing unusual); *State v. Berry*, 801 S.W.2d 64, 67 (Mo.1990) (following *Jackson;* probable cause found where first-hand tip was corroborated by police solely to the extent of verifying location and external description of premises and nature of vehicles parked in driveway); *compare United States v. Leake*, 998 F.2d 1359, 1363–65 (6th Cir.1993) (distinguishing *Jackson* and finding probable cause lacking where corroboration extended merely to general description of premises); *United States v. Gibson*, 928 F.2d 250, 252–

53 (8th Cir.1991) (probable cause absent where only description and ownership of premises and vehicles were corroborated). *Compare also United States v. Privette*, 947 F.2d 1259, 1260–61 (5th Cir.1991) (known but unnamed first-time informant reported direct observation, within last 24 hours, of amphetamine manufacturing operation, run by Privette, in certain warehouse and said that stolen cars were parked outside; officers corroborated that warehouse was leased to Privette, and Privette's car and a stolen truck were parked outside warehouse; finding of probable cause upheld), *cert. denied,* —— U.S. ——, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992).

**7.** Because we hold that probable cause existed to support the warrant, we do not address the government's alternative reliance on the "good faith" exception to the warrant requirement announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**8.** Neither defendant testified at trial.

plained in *United States v. Olano*, —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1777–79, 123 L.Ed.2d 508 (1993), to satisfy this standard, a party must demonstrate: (i) that there was an error in the lower court's action, (ii) that such error was plain, clear, or obvious, and (iii) that the error affected substantial rights, i.e. that it was prejudicial and not "harmless." Under the third prong of *Olano*, it "is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* at ——, 113 S.Ct. at 1778. Even if all three of these prerequisites are fulfilled, the Courts of Appeals should correct such errors only when they "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at ——, 113 S.Ct. at 1779 (*quoting United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

■ In *Bruton*, the Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated when an unredacted, facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is given a limiting instruction to consider the confession only against the codefendant. *See Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622. The constitutional violation is triggered because if the declarant is unavailable, the "powerfully incriminating extrajudicial statements of a codefendant who stands accused side by side with the defendant" cannot be tested by cross-examination. *Id.* at 135, 88 S.Ct. at 1627. In *Richardson v. Marsh*, 481 U.S. 200, 208, 211, 107 S.Ct. 1702, 1707–08, 1709, 95 L.Ed.2d 176 (1987), however, the Supreme Court limited the reach of *Bruton*, conclud-

ing that when the statement is "not incriminating on its face," but becomes "so only when linked with evidence introduced later at trial," the statement need not be excluded provided it is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," and the jury is given a proper limiting instruction. Although the Supreme Court left the question open in *Marsh, see id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5, this court has since held that if, as in this case, the codefendant's statement makes no reference to the defendant's name but still discusses his existence, its admission at a joint trial is not violative of *Bruton* unless "the jury would logically conclude from the other evidence in the record that the neutral pronoun or general word indeed represented the defendant." *United States v. Mendoza–Cecelia*, 963 F.2d 1467, 1481 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992).

In light of Detective Romero's testimony immediately proceeding the introduction of the tape into evidence, as well other evidence in the record, we agree with Foree that the jury was directly compelled to infer that he was the man mentioned in Draznin's statements.[9] The simple fact that the jury understood the statements to refer to Foree, however, is not sufficient to find a *Bruton* violation—there still remains the predicate question of whether Draznin's disjointed lamentations, even when identified with Foree, were the kind of "powerfully incriminating," *Bruton*, 391 U.S. at 135, 88 S.Ct. at 1628, "*directly inculpat[ory]*" *confessions* that the Confrontation Clause protects against in this context. *United States v. Beale*, 921 F.2d

---

**9.** *See United States v. Van Hemelryck*, 945 F.2d 1493, 1501–03 (11th Cir.1991) (finding such compelled inference where "the record ... present[ed] no person other than [the defendant] who could have been the man of [co-defendant's] statement"); *United States v. Bennett*, 848 F.2d 1134, 1141–43 (11th Cir.1988) (pronoun "they" in redacted statement understood by jury as "clearly referr[ing]" to defendants in light of prosecutor's closing argument); *United States v. Petit*, 841 F.2d 1546, 1555–56 (11th Cir.), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988) (reference to "friend," "when considered with the other evidence, could reasonably be understood only as referring to [defendant]"); *United States v. Pendegraph*, 791

F.2d 1462, 1465 (11th Cir.) ("the jury could very easily infer [defendant] to be the 'individual' referred to in [codefendant's] confession, if only because there was no other possibility"), *cert. denied,* 479 U.S. 869, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986). *Compare United States v. Perez–Garcia*, 904 F.2d 1534, 1542 (11th Cir.1990) (jury not compelled to infer that codefendant's coconspirators mentioned in statement were the present defendants); *United States v. Vasquez*, 874 F.2d 1515, 1517–18 (11th Cir.1989) (nothing in confession itself or in record as a whole directly linked defendant, in mind of jury, to "individual" in codefendant's confession), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990).

1412, 1425 (11th Cir.) (emphasis added), *cert. denied,* 502 U.S. 829, 112 S.Ct. 99, 100, 264, 116 L.Ed.2d 71 (1991).[10]

But even if we assume that the district court erred in admitting Draznin's statements, in violation of *Bruton,* so that the first prong of *Olano* is satisfied, and that the error was sufficiently clear to fulfill the second prong of *Olano,* admission of this evidence was "harmless error" under *Olano's* third prong. It is well settled that *Bruton* violations are normally subject to the "harmless error" rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See, e.g., Van Hemelryck,* 945 F.2d at 1503. Under *Olano's* third prong, when reviewing for "plain error," we apply a "modified" version of this standard, with the burden of persuasion shifted to the appellant. Foree has not met this heavy burden.

Foree argues that Draznin's statements were devastating to the theory of his defense—i.e. that he and Draznin grew the marijuana independently for their own personal use. By showing that there was an agreement between Draznin and Foree and that they ran a "business," Foree contends, the tape supplied the only evidence of conspiracy, and significantly bolstered the prosecution's allegation of an intent to distribute on his part by tying him to the additional plants at the Galloway Street house. We are persuaded, however, that the jury could have found Foree guilty beyond a reasonable doubt even without Draznin's statements.

The evidence at trial showed that Foree, the day before the arrest, took the CI to the Galloway Street house, every room of which was filled with marijuana plants, and *opened the garage door with a remote control device.* Draznin was not present. At the time of their arrest, Foree, not Draznin, had the key to the Galloway Street house. Draznin, on the other hand, at her post-arrest interview, could not remember the address of the Galloway Street house, the number of bathrooms within, the amount paid for rent or utilities,

and was evasive on the issue of who provided the money for the rent, which was paid by an anonymous money order. The fact that Foree had such ready access to a house with an indoor marijuana cultivation facility that was obvious to anyone who entered, coupled with Draznin's unfamiliarity with a house *she* was leasing and admitted visiting, supplied persuasive evidence of a conspiracy in which Draznin agreed to act as a front for Foree's expansion of the Virginia Street operation to the Galloway Street house. *Compare United States v. Key,* 725 F.2d 1123, 1126–27 (7th Cir.1984) (plain error *Bruton* violation existed because codefendant's confession was the *only* evidence, in fraud prosecution, that accident was staged). As for Foree's intent to distribute, the jury certainly could have surmised such a design from the combined number of 24 mature plants, 56 cuttings, and 17 seedlings found at the Virginia Street house alone. We therefore hold that even assuming that a *Bruton* violation occurred, it was harmless beyond a reasonable doubt under the third prong of *Olano,* and thus did not constitute "plain error."

### III.

Foree and Draznin next challenge the definition of "marihuana plants" employed by the district court at sentencing. 21 U.S.C. § 841(b) requires certain minimum mandatory sentences for convictions of possession with intent to distribute, *inter alia,* enumerated quantities of "plants"; U.S.S.G. § 2D1.1(c) sets the base offense level for certain drug offenses on the basis of marijuana weight after equating each "plant" to a kilogram of marijuana if the offense involved fifty or more plants and 100 grams of marijuana if the offense involved fewer than fifty plants. *See* U.S.S.G. § 2D1.1(c), n. *, ¶ 5.

The search of the Virginia Street house revealed 24 mature, three to five foot plants, 56 "cuttings", and 17 "seedlings." The search of the Galloway Street house revealed

---

**10.** *See also Mendoza–Cecelia,* 963 F.2d at 1481 ("Although the jury was logically compelled to include Mendoza–Cecelia as one of the 'crew of six' [mentioned in codefendant's statement], the confession did not directly implicate the crew in the conspiracy."); *United States v. Satterfield,*

743 F.2d 827, 849 (11th Cir.1984) (cryptic remark by codefendant that he "had too many people that got him into trouble" was not "clearly inculpatory"), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).

an additional 49 mature plants. Appellants concede that the 73 mature plants are "marihuana plants" for the purposes of sentencing, but argue that the cuttings and seedlings cannot count as plants unless the government proves that these remaining plant materials had some readily observable evidence of root formation. *See United States v. Beasley*, 2 F.3d 1551, 1561 (11th Cir.1993) (government must establish drug quantity by preponderance of the evidence at sentencing), *cert. denied*, —— U.S. ——, 114 S.Ct. 2751, 129 L.Ed.2d 869 (1994). Because the government made no attempt to ascertain whether any of the cuttings or seedlings had roots, and the seized materials had either been destroyed or had decomposed in storage by the time of sentencing, defendants argued in the district court that the government had not satisfied this burden of proof.

The district court rejected the contention that evidence of root formation was a necessary prerequisite for a cutting or seedling to be a "plant," and found that 146 plants existed for the purposes of sentencing because 146 separate containers of planted vegetable matter were seized. In sentencing Foree, it then utilized this number to arrive at the total offense level of 30.[11] As Foree fell into Criminal History Category I, the district court sentenced him to 97 months imprisonment, the low end of the 97–121 month Guideline range. If, as appellants argue, there were only 73 marijuana plants, the applicable Guideline range would be 63–78 months. As for Draznin, although the determination of her base offense level of 4, pursuant to U.S.S.G. § 2D2.1(a)(3), did not directly rely on the number of plants seized, the district court's upward departure from the recommended Guideline range of 0–6 months to sentence Draznin to 12 months was predicated specifically on the court's finding that

her offense involved 146 plants. Therefore, both defendants may have been prejudiced by the district court's holding.

Neither the statute nor the current Sentencing Guidelines define the term "marihuana plant." But although the question is one of first impression in this circuit, other courts that have considered the issue have concluded that, for sentencing purposes, root formation is the *sine qua non* of a marijuana "plant." *See United States v. Delaporte*, No. 94–1407, 42 F.3d 1118, 1120–21 (7th Cir. 1994); *United States v. Robinson*, 35 F.3d 442, 445–46 (9th Cir.1994); *United States v. Burke*, 999 F.2d 596, 601 (1st Cir.1993) ("at the first sign of roots, a plant exists for sentencing purposes"); *United States v. Edge*, 989 F.2d 871, 876–79 (6th Cir.1993) (plant exists if there is "some readily observable evidence of root formation"); *United States v. Curtis*, 965 F.2d 610, 616 (8th Cir. 1992); *United States v. Bechtol*, 939 F.2d 603, 604–05 (8th Cir.1991); *United States v. Eves*, 932 F.2d 856, 858–60 (10th Cir.), *cert. denied*, 502 U.S. 884, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991); *United States v. Carlisle*, 907 F.2d 94, 96 (9th Cir.1990) (per curiam); *United States v. Angell*, 794 F.Supp. 874, 875 (D.Minn.1992), *sentence vacated on other grounds*, 11 F.3d 806 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2747, 129 L.Ed.2d 865 (1994); *United States v. Fitol*, 733 F.Supp. 1312, 1314–16 (D.Minn.1990) ("To distinguish two plants from one plant cut into two pieces, there must be some evidence of individual growth after the severance, such as the growing of roots from a cutting.")[12]

The government attempts to distinguish these decisions by arguing that although all of them concluded that root formation constitutes evidence that something *is* a plant, only

---

11. The district court equated each plant to 1 kilogram of marijuana for a base offense level of 26 under U.S.S.G. § 2D1.1(c)(9) (Nov. 1990), added a two-level "dangerous weapon" enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) and a two-level managerial enhancement pursuant to U.S.S.G. § 3B1.1(c) for an adjusted offense level of 30 on Count I, grouped Counts II and IV with Count I under U.S.S.G. § 3D1.2(b) and (c), and calculated the total offense level to be 30 pursuant to U.S.S.G. § 3D1.3(a).

12. In light of these decisions, the Sentencing Commission has recently proposed amending U.S.S.G. § 2D1.1 to provide that for "purposes of the guidelines, a [marihuana] 'plant' is an organism having leaves and a readily observable root formation (e.g., a marihuana cutting having roots, a rootball, or root hairs) is a marihuana plant." *Proposed Amendments to the Federal Sentencing Guidelines*, 56 Crim.L.Rep. (BNA) 2063, 2088, 2091 (Jan. 11, 1995).

*Edge* and *Robinson* squarely held that a cutting without roots is *not* a plant. The government would have us hold that a cutting is a plant if "it appears to the court to be a growing and living thing, even if its root structures are not yet formed." The Tenth Circuit's response to a similar argument by a defendant (that a marijuana plant must not only have roots but must be viable) effectively answers this contention:

> We do not even begin to believe that Congress intended an abstruse interpretation that would require police officers to possess infrared gas analyzers to determine whether gas exchange is occurring in marijuana growth or to undergo botanical training in order to observe marijuana ... over a period of time to see whether increments of new tissue appear.... Whether the plant could survive on its own [is not the] issue; if it looks like a "plant"—that is, if it has a reasonable root system—it will be considered a "plant." No expert need testify, no experiments with instrumentation to monitor whether gaseous exchange is occurring need be conducted, no elaborate trimester or viability system need be established.

*Eves*, 932 F.2d at 860; *see also Edge*, 989 F.2d at 878 (same).

Nor are we persuaded by the government's objection that the test adopted by the other circuits will result in a windfall to defendants like Foree who are caught early in the growing process when many of the cuttings are immature. It is true that in *United States v. Osburn*, 955 F.2d 1500, 1506–10 (11th Cir.), *cert. denied*, — U.S. ——, ——, 113 S.Ct. 223, 290, 121 L.Ed.2d 160, 215 (1992), this Court upheld, as against a due process challenge, 21 U.S.C. § 841(b) (which punishes marijuana growers by relying in sentencing on the number of live plants recovered rather than marijuana weight), and U.S.S.G. § 2D1.1 (which equates each plant to a kilogram of marijuana if fifty or more plants are involved in the offense, a figure in excess of the scientifically-determined average yield per plant). Nevertheless, under this scheme, the *government* undeniably benefits if it catches a grower before harvest, for after harvest the defendant would have to be sentenced according to the (much lower) actual weight of the usable portions of the plant (i.e. not stalks or sterilized seeds). *See* 21 U.S.C. § 802(16) (defining "marihuana"); U.S.S.G. § 2D1.1, comment. (n. 1) (defining "mixture or substance"); *United States v. Bradley*, 905 F.2d 359, 361 (11th Cir.1990) ("When marijuana is discovered in dry leaf form after harvest, the weight measurement is appropriate."). Given the existing sentencing scheme, we are not inclined to stretch the definition of "marihuana plant" beyond all reason, embroiling the district courts in battles of the experts during protracted sentencing hearings.[13]

We thus adopt the analysis of our sister circuits. Marijuana plants have three characteristic components "readily apparent to the unaided layperson's eye: roots, stems, and leaves." *Robinson*, 35 F.3d at 446. "Until a cutting develops roots of its own, it is not a plant but a mere piece of some other plant." *Id.* Accordingly, we hold that cuttings and seedlings are not "marihuana plants" within the meaning of 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1(c) unless there is "some readily observable evidence of root formation." *Edge*, 989 F.2d at 877.

In this case, the district court made no findings on whether any of the 56 cuttings or 17 seedlings had roots.[14] At oral argument,

---

**13.** We also reject the government's suggestion that the root structure test is inconsistent with the method for calculating quantity in attempt and conspiracy cases outlined in U.S.S.G. § 2D1.1, comment. (n. 12), ¶ 2, which provides that drug quantity should be determined by reference to the defendant's intent. Furthermore, the government's own proposed test would be equally "inconsistent," to the extent that any inconsistency exists, with U.S.S.G. § 2D1.1, comment. (n. 12), ¶ 2, because it also relies on objective factors extrinsic to what the defendant intended to do—i.e. it looks to evidence of growth rather than number of seeds planted, cuttings made, or containers filled.

**14.** We therefore have no occasion to decide whether the appropriate methodology for such fact finding is plant-by-plant analysis, or if examination of representative samples will suffice, for the government in this case did neither. *Compare Robinson*, 35 F.3d at 446 (discounting individual seedlings with no root formations); *Angell*, 794 F.Supp. at 875 (same) *with Burke*, 999 F.2d at 601 (suggesting that examination of representative samples was sufficient where all cut-

the government informed us that the plants seized from Foree and Draznin have either been destroyed or, where preserved, have irreversibly decayed. It therefore seems improbable that the government will be able to meet its burden of showing that any of the contested plant material had root formations. Nevertheless, we hesitate to pretermit the question on appeal. Because the district court used an incorrect definition of "marihuana plants," we vacate Foree's sentence and remand for resentencing to give the government a chance to make a proper showing if it can do so. We also vacate Draznin's sentence to afford the district court the opportunity to reconsider her sentence in light of the newly-calculated number of plants used to set Foree's base offense level.[15]

## IV.

 Our holding on the sentencing issue does not imply, however, that Foree and Draznin were entitled to a requested *jury* instruction, on Counts I and II, on this definition of a "marihuana plant."

21 U.S.C. § 841(a) and § 844(a), on which Foree's and Draznin's convictions on Counts I and II were in part predicated, prohibit, respectively, possession with intent to distribute and simple possession of "a controlled substance". 21 U.S.C. § 812(a) and Schedule I(c)(10) inform us that "marihuana" is such a "controlled substance", but do not mention marijuana plants. The superseding indictment in this case, however, specifically

charged both defendants with possession with intent to distribute "marihuana plants" (Count I) and conspiracy to possess with intent to distribute "marihuana plants" (Count II) (rather than simply using the statutory term "marihuana"). Because they were charged more narrowly than the statute requires, defendants argue that they were entitled to a jury instruction on what is a "marihuana plant."

The proffered instruction had no relevance to anything the government was required to prove in this case. Among the offense elements on Counts I and II were (i) possession and (ii) an intent to distribute. But there was no question that both Draznin and Foree possessed *some* mature plants, and hence no dispute as to the possession element of the offenses charged. As for the intent to distribute element, the district court's failure to give the proffered instruction was completely academic. Here, the district court implied (by failure to instruct otherwise) that all of the seized plant materials were "marihuana plants," and then instructed the jury that an intent to distribute can be inferred from the number of plants possessed. The defendants would not have benefitted from an alternative instruction that plants must have roots (and thus not all of the materials seized were "marihuana plants"), but that an intent to distribute can be inferred from the number of plants possessed plus the number of plants the defendants attempted to produce (i.e. cuttings and seedlings).[16]

---

tings were the same size (although also apparently approving district court's decision not to count cuttings not specifically examined)); *Bechtol,* 939 F.2d at 604–05 (where all cuttings were about the same size, examination of some by police officer sufficed).

15. Foree and Draznin had argued, in the alternative, that remand was required for resentencing because the district court had failed to comply with the procedures announced by this court in *United States v. Jones,* 899 F.2d 1097, 1102–03 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill,* 984 F.2d 1136, 1137 (11th Cir.1993) (en banc). Because the case is now being remanded on other grounds, we need not decide the issue; after conducting the new sentencing hearing, stating its factual findings, applying the Guidelines, and imposing sentence, the district court should, on remand, comply with *Jones.*

Draznin's argument that she did not receive notice of the possibility of an upward departure on her sentence, as required by *Burns v. United States,* 501 U.S. 129, 135–37, 111 S.Ct. 2182, 2186–87, 115 L.Ed.2d 123 (1991), is mooted by remand. As for Draznin's challenges to the $250 fine and the district court's denial of an acceptance of responsibility adjustment pursuant to U.S.S.G. § 3E1.1(a), her arguments are now more profitably addressed to the sentencing judge in the context of the *Jones* procedure (assuming the district court chooses to reimpose the fine and again denies the adjustment).

16. We express no opinion on whether an instruction on what is a marijuana plant may be appropriate in the rare case where possession itself is reasonably in question; i.e. the indictment specifically charges possession of "marihuana plants" *and* there is a dispute as to whether *any* of the seized materials have developed sufficient root systems to be considered plants.

## V.

We briefly discuss the effect of our vacatur and remand on Foree's challenge to the two-point managerial role adjustment to his base offense level on Count I, imposed by the district court pursuant to U.S.S.G. § 3B1.1(c).[17] Foree argues that the district court erred in not making any explicit factual findings in support of the adjustment, or, alternatively, that the trial court's implicit adoption of the factual description that the probation department's presentence investigation report ("PSI") used to support such an adjustment resulted in plainly erroneous factual findings. This is so, Foree contends, because the PSI relied largely on Draznin's post-arrest statements (which Foree argues were inherently unreliable hearsay), and because Foree was affirmatively precluded by the district court from presenting any witnesses, including Draznin, who might have refuted the PSI's factual conclusions. The government argues that the evidence was sufficient for the district court to find, by preponderance, that Draznin was a managed "participant" in Foree's possession with intent to distribute offense conduct, but relies on a mix of facts not mentioned in the PSI or by the district court. Because we have vacated the sentence and remanded for resentencing, we will not resolve these competing factual claims.[18] Rather, the district court, on remand, should make explicit factual findings if it chooses to reimpose a managerial role adjustment on Foree. The parties' objections can then be "presented to, passed upon, and perhaps cured by the sentencing judge" in the context of the *Jones* procedure

17. The district court made no mention, during the sentencing hearing, of the managerial role adjustment recommended in the PSI. We infer that one was imposed, however, from the district court's remark that it was sentencing Foree "at the lower end of the guideline range." This suggests that Foree was sentenced at a total offense level of 30, which carries a 97 to 121 month sentencing range, rather than 28, which carries a 78 to 97 month range in Criminal History Category I. *See* U.S.S.G. Ch. 5, Pt. A, sentencing tbl.

18. Accordingly, because we cannot know what particular facts will lay the predicate for any managerial role adjustment the district court may choose to impose on remand, we do not reach the issue of whether the November 1990 amendment to the Introductory Commentary of U.S.S.G. § 3B1.1 may be applied retroactively to Foree's offense conduct in January of 1990 without running afoul of the Ex Post Facto Clause. Prior to that amendment, this circuit, like many others, consistently held that, in applying such an adjustment, "the sentencing court [must] limit its factual inquiry to the defendant's role in the offense of conviction instead of other criminal conduct in which he may have engaged." *United States v. Rodgers*, 951 F.2d 1220, 1221–22 (11th Cir.), *modified*, 972 F.2d 1253 (11th Cir.1992) (apparently construing 1989–90 Sentencing Guidelines). *See also United States v. De La Rosa*, 922 F.2d 675, 680 (11th Cir.1991) (same; construing 1988 or 1989 Guidelines); Jefri Wood & Diane Sheehey, *Guideline Sentencing* 50 (Fed.Jud.Center 1994) (listing pre-amendment cases from this and other circuits); *cf. United States v. Clark*, 889 F.2d 1056, 1057–58 n. 2 (11th Cir.1989) (reserving question).

The November 1990 amendment, however, provided that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope § 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts cited in the count of conviction." This court has twice applied this amendment retroactively, *see United States v. Holland*, 22 F.3d 1040, 1045–46 (11th Cir.1994) (offense conduct in 1989, sentencing in 1992), *cert. denied*, 63 U.S.L.W. 3532, 1994 WL 512695, — U.S. ——, 115 S.Ct. 898, — L.Ed.2d — (Jan. 17, 1995); *United States v. Nyhius*, 8 F.3d 731, 744 (11th Cir.1993) (offense conduct from 1985 to 1989; sentencing in 1991), *cert. denied*, — U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994), although both times without any discussion of possible ex post facto difficulties.

At least one circuit, however, has held that, where, as in our circuit, the November 1990 amendment conflicted with prior circuit precedent, it could not be applied retroactively without violating the Ex Post Facto Clause. *See United States v. Saucedo*, 950 F.2d 1508, 1511–17 (10th Cir.1991), *overruled on other grounds, Stinson v. United States*, — U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Other circuits have admittedly disagreed. *See, e.g., United States v. Scarano*, 975 F.2d 580, 586–87 (9th Cir.1992); Wood & Sheehey, *supra*, at 49 (listing cases).

Because we cannot tell, until after the disposition of the remand, whether this case even presents this issue (i.e. whether the district court's managerial adjustment will be based on any conduct beyond the offense of conviction), we express no opinion at this time about either the binding effect of the implicit assumptions of retroactivity in *Holland* and *Nyhius*, or the proper disposition of the merits of the ex post facto challenge if those cases are not binding. We simply identify the issue for the parties and the district court should its consideration become necessary upon remand.

before the need for appellate consideration arises. *United States v. Snyder*, 941 F.2d 1427, 1428 (11th Cir.1991).

### VI.

For the foregoing reasons, the convictions of Foree and Draznin are AFFIRMED, the sentences of both defendants are VACATED, and the case is REMANDED to the district court for resentencing and any other proceedings consistent with this opinion.