[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14993
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2010
JOHN LEY
CLERK

D. C. Docket Nos. 04-20046-CR-UU, 04-21036-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARITZA VALIENTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 17, 2010)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Maritza Valiente appeals her convictions for conspiracy to defraud the

United States in violation of 18 U.S.C. § 286, and filing false claims against the United States in violation of 18 U.S.C. § 287.  In a separate case, Valiente was also convicted of making false statements on a passport application in violation of 18 U.S.C. § 1542.[1]  Both convictions were consolidated for sentencing purposes.  On appeal, Valiente argues that the evidence was insufficient to support her conviction.  Valiente also asserts that the district court erred by allowing hearsay into evidence at trial.  Upon review of the record and consideration of the parties' briefs, we affirm.

## I. BACKGROUND

### A. The Crimes

Valiente owned United Mortgage Financing, Inc. ("United Mortgage").  Eda Felix owned and operated First Services Corporation ("First Services").  Ela Melendez owned and operated Alexia Insurance, Tax Services & Check Cashing, Inc.  Between December 1999 and May 2000, Esther Rivera worked for First Services as a receptionist.

There are two related conspiracies in this case.  Valiente and her

---

[1] The district court imposed 60 months of imprisonment on the passport-fraud conviction to run concurrent with her other sentences.  Valiente argues that if this Court reverses her tax-fraud convictions, then it should also remand her passport-fraud conviction for resentencing.  Because we affirm Valiente's tax fraud convictions, we find no error that requires a remand for resentencing on Valiente's passport fraud conviction.

codefendants falsely claimed that individuals were entitled to income tax refunds based upon their employment at United Mortgage in 1999. However, United Mortgage never had any employees. Using falsified W-2 forms provided by Valiente's United Mortgage company, Felix prepared and filed false IRS1040 Forms at First Services. During early 2000, Rivera also assisted Felix in preparing and filing false 1040 Forms. Felix, Valiente, and Rivera then distributed the illegal proceeds of the federal income tax refunds. The second conspiracy mirrored the activities of the first, the only difference being that Melendez prepared and filed the false 1040 Forms instead of Felix.

*B. The Indictment*

A federal grand jury returned an indictment against Valiente and three codefendants— Felix, Rivera, and Melendez. In the first conspiracy, Count One of the indictment charged Valiente, Rivera, and Felix with conspiracy to defraud the United States in violation of 18 U.S.C. § 286. Count Two of the indictment charged Valiente with participation in a second conspiracy with Rivera and Melendez to defraud the United States in violation of 18 U.S.C. § 286. Both conspiracies served to unjustly enrich the defendants by preparing and filing false income tax returns. Counts Three to Nine, Eleven and Twelve, charged Valiente and various codefendants with making false claims against the United States by

3

filing false income tax returns for numerous individuals in violation of 18 U.S.C. § 287.

*C. The Trial*

*1. Agent Hammond's Investigation and Testimony*

IRS Special Agent Mary Hammond conducted an investigation to uncover the details of the conspiracy. Agent Hammond found that Valiente paid Felix to incorporate United Mortgage in July 1999. United Mortgage's incorporation documents indicated that (1) United Mortgage's principal place of business and mailing address was 6110 Southwest 92nd Avenue, Miami, Florida; (2) Felix was the company's registered agent; (3) Valiente was the company's incorporator and president; and (4) Valiente signed the Articles of Incorporation. Valiente's driver's license also contained the same address as United Mortgage's principal place of business.

Agent Hammond obtained certified copies of individual income tax returns, including 8453 Forms and Tax Return Print ("TRPRT") 1040 Forms. Agent Hammond explained that when a return is filed electronically, the IRS also requires the individual to file an 8453 Form which includes the names and signatures of the taxpayer and tax preparer. When an 8453 Form is not filed, IRS agents have access to a TRPRT printout of the data that was filed electronically by a taxpayer.

4

The government introduced the 8453 Form and TRPRT printouts, as well as a summary chart, for the individual tax returns in this case. Agent Hammond testified that the information contained in each of the tax returns contained similar information such as: (1) each W-2 Form came from Valiente's United Mortgage company, (2) the 1999 individual tax returns were prepared by codefendants Felix or Melendez, and (3) both Felix and Melendez falsely claimed a tax refund as United Mortgage employees. R8 at 22, 24–25, 28, 60.

Agent Hammond further testified that on July 31, 2000, she served a summons on Valiente's United Mortgage's company requesting employee and payroll records. However, Valiente never provided those records to Agent Hammond. R8 at 27–29; R10 at 62–63. Valiente then admitted to Agent Hammond that United Mortgage did not have any employees. *Id*. Moreover, United Mortgage did not file any corporate tax returns or tax forms related to any employees in 1998 or 1999. Agent Hammond then concluded that all of the tax forms in this case were fraudulent including the W-2 Forms, the tax returns, and the electronic submissions.

According to Agent Hammond's testimony, each of the thirty-two tax returns was filed electronically, and each taxpayer agreed to a Refund Anticipation Loan ("RAL") check. Agent Hammond explained that a RAL check is a

5

short-term consumer loan secured by a taxpayer's expected tax refund. The RAL check is designed to offer customers immediate access to their income tax refund. The tax preparer has a relationship with a bank, here Household Bank, and issues a check on behalf of the bank to the taxpayer. Once the IRS advances the refund, the bank is made whole on the loan.

The government introduced twenty-nine checks as well as a summary chart describing the RAL checks that were issued. While the taxpayers' names appeared on the checks as endorsers, Valiente's name also appeared on nine of the checks—(1) on four, her name appeared on the front as the payee and on the back as the endorser, and (2) on five, her name appeared only on the back as the endorser—which was uncommon as the check should have contained only the taxpayer's name that appeared on the tax return. Valiente deposited eight of the nine RAL checks into her personal bank accounts—money to which she was not entitled.

With regard to the ninth check, Agent Hammond testified that Valiente told her that she drove her housekeeper, Georgina Sanchez, to First Services to have Felix prepare a tax return for Sanchez. Later, Valiente drove Sanchez back to First Services to pick up the RAL check. Valiente then drove Sanchez to Check Cashing USA to cash the RAL check. Valiente told Agent Hammond that she

6

knew that all the checks were loans based on a taxpayer's expected income tax refund from the IRS. R8 at 52–53. Agent Hammond testified that she asked Valiente about depositing the checks containing her name and signature. Valiente responded that she deposited the checks and gave some of the money to her codefendants and some to the actual taxpayer. Valiente kept the remainder for herself.

With respect to the other individual tax fraud victims in this case, Valiente explained to Agent Hammond that some of the alleged taxpayers were relatives of her codefendants who did not live in Miami.[2] However, Valiente could not explain who signed the checks. Instead, Valiente received the checks from Felix, Rivera, and Melendez who, incidentally, prepared all of the income tax return paperwork.

Agent Hammond's investigation also revealed that Valiente provided Felix with information about Jorge Garavito, the father of Valiente's two children. Felix then prepared a false W-2 Form and a false income tax return for Garavito with income that he allegedly earned from United Mortgage. However, Garavito was living in Colombia at the time. Valiente signed and deposited Garavito's RAL

---

[2] The government also called Rosa H. Garcia-Feliciano and Annie J. Alvarez-Gonzalez, who each testified that (1) they had never traveled to Miami, (2) they never heard of or worked for United Mortgage, (3) they did not file a United States tax return in 1999, (4) they did not know Valiente, (5) they did not know that the IRS issued a refund check in each of their names, and (6) they were not aware that Valiente deposited the checks into her personal account.

7

check into her bank account.[3] Agent Hammond found that the total value of the checks in this case was over $100,000, and further revealed that Valiente deposited a total of $37,002.15 into her personal bank accounts.

Additionally, Agent Hammond testified that Rivera told her that she (Rivera) overheard a conversation between Valiente and Felix in which Valiente stated that she needed employees to have W-2 Forms. R10 at 76–77. Rivera also told Agent Hammond that Valiente and Felix had an agreement to prepare false tax returns and that Valiente typed United Mortgage's false W-2 Forms at First Services.

*2. Rivera's Testimony*

Rivera testified on behalf of Valiente. Rivera stated that Valiente visited First Services two or three times and spoke with Felix. On cross-examination, Rivera testified that she did not remember whether: (1) she introduced Valiente to Melendez (2) Valiente owned United Mortgage, (3) Valiente brought W-2 Forms from United Mortgage to Felix which were prepared by Felix in a back office, or (4) that she pled guilty to conspiring with Valiente to defraud the United States. Further, Rivera denied that she agreed to the government's factual proffer, which

---

[3] Agent Hammond testified that a 1099 Form is similar to a W-2 Form, except that there is no withholding of taxes. If an employer prepares a 1099 Form, they do not prepare a W-2 Form for that employee. According to Valiente, she paid Garavito referral fees for referring mortgage clients to her, and she issued a 1099 Form to Garavito.

8

states that Valiente and Felix created a scheme to file fraudulent tax returns by submitting false W-2 Forms from United Mortgage.

The government, however, introduced Rivera's plea agreement in which she pled guilty to conspiring with Valiente and Melendez to defraud the IRS. The government further showed that Rivera's plea colloquy detailed the following statements:

> In early 2000, defendants Valiente and Felix hatched a scheme to submit to [the] IRS false W-2 information from Valiente's company, United Mortgage Corporation. The scheme had two somewhat overlapping phases, both involving the defendant Rivera, who worked for Felix at a tax preparation business called First Services and also knew Melendez.

R11 at 72.

While Rivera testified that she did not remember anything, the government proffered this statement as evidence that Rivera agreed with its factual proffer during her plea colloquy. The government also presented evidence that in 2000 and 2001, Rivera told Agent Hammond that she introduced Valiente to Melendez because she was upset with Felix for using her (Rivera's) relatives' names on false income tax returns.

Valiente moved for a judgment of acquittal. The district court denied Valiente's motion, finding that all of the evidence demonstrated Valiente's knowledge and willful participation in a conspiracy to commit income tax fraud.

9

Subsequently, the jury convicted Valiente on Counts One through Nine, Eleven, and Twelve.

*D. The Sentence*

The Pre-sentence Investigation report ("PSI") assigned a base offense level of 15 pursuant to § 2T1.4 for the tax-fraud convictions. The PSI then assessed a multiple-count adjustment, pursuant to § 3D1.4, resulting in a total offense level of 16. Valiente had 4 criminal-history points, resulting in a criminal history category of III and an advisory guideline imprisonment range of 27 to 33 months.

At a consolidated sentencing hearing, the district court imposed an upward variance and sentenced Valiente to 60 months of imprisonment—60 months as to each count in the tax-fraud case to run concurrent to her other sentences. This timely appeal followed.

## II. DISCUSSION

*A. Sufficiency of the Evidence*

"Sufficiency of the evidence is a question of law that we review de novo." *United States v. Gupta*, 463 F.3d 1182, 1193 (11th Cir. 2006) (citation omitted). In judging the sufficiency of the evidence, we view the evidence in the light most favorable to the government. *Id*. at 1193–94 (citation omitted). A conviction must be affirmed unless "under no reasonable construction of the evidence, could the

jury have found [a defendant] guilty beyond a reasonable doubt." *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam) (citation omitted).

To establish that a defendant has conspired to defraud the United States under 18 U.S.C. § 286, the government must prove "the existence of an agreement to achieve an unlawful objective, the defendant's knowing and voluntary participation in the conspiracy, and the commission of an overt act in furtherance of it." *Gupta*, 463 F.3d at 1194 (citation and quotation omitted). "Conspiracy may be proven by circumstantial evidence and the extent of participation in the conspiracy or extent of knowledge of details in the conspiracy does not matter if the proof shows the defendant knew the essential objective of the conspiracy." *Id.* (citation and quotation omitted).

It is a crime to make or present "to any department or agency [of the United States], any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287.

Here, the evidence taken in the light most favorable to the government, supports the conclusion that an agreement existed between Valiente, Felix and Melendez to file fraudulent income tax returns, cash the RAL checks, and retain the illegal proceeds. First, the record shows that Valiente knew the checks she deposited into her personal account were fraudulently obtained. Valiente also

11

knew that her company did not have any employees, and the company did not file corporate tax returns or tax forms on behalf of any employees in 1999. Therefore, when Valiente cashed Garavito's RAL check, she knew it was based on the pretense the he worked as a United Mortgage employee, and there were no tax withholdings for Garavito to justify an income tax refund.

Second, a reasonable jury could find that Valiente participated in a tax fraud scheme to help Sanchez obtain an income tax refund.[4] Valiente's overt actions indicate that she not only associated herself with the tax fraud scheme, but assisted others in defrauding the government. Lastly, Felix and Melendez gave Valiente eight fraudulently obtained RAL checks, totaling over $37,000, for deposit into her personal account which she knew were tax-refund loans issued to other people.[5] Importantly, Valiente told Agent Hammond that she and her codefendants agreed to file the false returns and split the proceeds.

While Valiente did not directly submit false claims to the IRS, Valiente conspired with and aided others in defrauding the government. Thus, we find that

---

[4] The record shows that Valiente drove Sanchez to First Services to have Felix prepare a tax return for Sanchez. Valiente also drove Sanchez to Check Cashing USA to cash the fraudulently obtained RAL check. R8 at 51–52.

[5] The checks were allegedly endorsed by the taxpayer, and the record shows that Valiente knew some of the taxpayers were not in Miami to sign the RAL checks. R8 at 53–54. Furthermore, there is no evidence to indicate that this money was legitimate payment for services rendered by Valiente.

reasonable trier of fact could have concluded that the evidence established

Valiente's guilt beyond a reasonable doubt under § 287.

Accordingly, we find that sufficient evidence supports Valiente's tax fraud

convictions.

*B. Hearsay*

Valiente also asserts that the district court erred by allowing the jury to

consider Agent Hammond's testimony explaining that Rivera made statements to

Agent Hammond that Valiente was an active participant in the scheme to file false

income tax returns with Felix. Valiente argues that such statements are hearsay

and are only admissible to impeach Rivera's credibility under Federal Rule of

Evidence 613(b). Valiente's evidentiary challenge based on hearsay is meritless.

"We review the district court's ruling on admission of evidence for an abuse

of discretion." *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

However, Valiente's failure to object to the government's introduction of Rivera's

statements reduces our review for plain error. *United States v. Foree*, 43 F.3d

1572, 1577 (11th Cir. 1995) (failure to articulate an objection at trial is reviewed

under a plain error standard). To establish plain error, the defendant must

demonstrate that: (1) "there was an error in the lower court's action," (2) "that such

error was plain, clear, or obvious," and (3) "that the error affected substantial

13

rights, i.e. that it was prejudicial and not harmless." *Id.* at 1578 (citation and quotation omitted). Thus, "[a]n erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless." *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999).

Under Federal Rule of Evidence 801(d)(1)(A), a prior statement by a witness is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement," and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." Thus, under this rule, prior inconsistent statements are admissible both to impeach a witness and as substantive evidence. *United States v. Jacoby*, 955 F.2d 1527, 1539 (11th Cir. 1992).

In this case, the district court did not plainly err in admitting Agent Hammond's statements about what Rivera told her because they are not hearsay. The record indicates that, while under oath during her change-of-plea colloquy, Rivera accepted the government's factual proffer detailing Valiente's involvement in a tax fraud scheme. During the trial, however, Rivera's testimony purported to exonerate Valiente which directly contradicted the government's factual proffer. Therefore, Rivera's plea colloquy statement that she was involved in a tax fraud conspiracy with Valiente to defraud the United States is admissible as a prior

14

inconsistent statement by a witness and as substantive evidence. *See* Fed. R.

Evid. 801(d)(1)(A); *see also Jacoby*, 955 F.2d at 1539. In any event, even if an

error occurred, such error was harmless in light of the overwhelming evidence in

the record supporting Valiente's convictions for conspiracy to commit tax fraud

and making false claims against the United States. *See Hands*, 184 F.3d at 1329

(explaining that a conviction will not be reversed if the error has no substantial

influence on the outcome).

Accordingly, we find no reversible error on this claim, and we affirm.

**AFFIRMED**.