[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13196
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00138-CR-F-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE CURRY JOHNSON,
a.k.a. Baby J,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 24, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Willie Curry Johnson appeals his convictions and 292-month total sentence for conspiracy to distribute at least 50 grams of cocaine base and a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, possession with intent to distribute at least 5 grams of cocaine base and a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After review, we affirm.

## I. BACKGROUND

### A. Search Warrant and Arrest

In the fall of 2005, investigators with the Tallapoosa County Narcotics Task Force ("TCNTF") began investigating Defendant Johnson for drug trafficking. Using a confidential informant ("CI"), later identified as Coby Taylor, investigators conducted three controlled buys from Johnson on November 20, 2005, November 22, 2005 and December 9, 2005. Each time, Taylor purchased crack cocaine and cocaine powder from Johnson near Johnson's trailer home at 15 Johnson Drive while under surveillance and being recorded. Warrants for Johnson's arrest were issued based on the controlled buys.

Johnson, however, was not arrested until October 2007, when investigators searched Johnson's trailer home at 15 Johnson Drive. The affidavit for the search

warrant indicated that a CI reported seeing Johnson in possession of crack cocaine in his residence within the last 48 hours. The search of Johnson's trailer revealed, <u>inter alia</u>, a shotgun and ammunition, a video camera surveillance system, 41 grams of marijuana and $4,540 in cash. The search of another trailer at 46 Johnson Drive, owned by Johnson's sister-in-law, Contessa Ford, revealed, <u>inter alia</u>, a rifle and ammunition, a set of scales, plastic bags with drug residue, 21.2 grams of crack cocaine and 9.2 grams of powder cocaine.

Johnson was arrested and read his <u>Miranda</u> rights. Johnson later confessed to possessing the drugs found in both trailers and the shotgun and signed a written confession.

## B.    Trial

A federal grand jury charged Johnson with conspiracy with known and unknown persons to possess with intent to distribute 50 grams or more of crack cocaine and a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); possession with intent to distribute 5 grams or more of crack cocaine and a detectable amount of cocaine on November 22, 2005, November 30, 2005, and December 9, 2005, in violation of 21 U.S.C. § 841(a)(1) (Counts 2-4); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 5).

Johnson moved to suppress his confession and the evidence seized from his trailer. After an evidentiary hearing, a magistrate judge issued a report ("R&R") recommending that Johnson's motions to suppress be denied. The district court adopted the R&R over Johnson's objections and denied his motions to suppress.

At trial, the government: (1) presented evidence of CI Taylor's three controlled buys from Johnson in the fall of 2005; and (2) called several witnesses, including Taylor, who said they regularly bought crack and powder cocaine from Johnson over a period of about five years. Johnson often fronted the drugs to them and sometimes used "runners" to deliver them his product. Johnson used Contessa Ford's trailer as a stash house where he cooked crack cocaine. The jury found Johnson guilty on Counts 1, 3, 4 and 5, but acquitted him on Count 2 (the November 22, 2005 controlled buy).

At sentencing, over Johnson's objection, the district court imposed a 2-level leadership role enhancement in calculating Johnson's advisory guidelines range. After considering Johnson's advisory guidelines range of 360 months' to life imprisonment and the 18 U.S.C. § 3553(a) factors, the district court imposed a 292-month sentence. Johnson appealed.

## II. DISCUSSION

### A. Motions to Suppress

1. <u>Evidence from 15 Johnson Drive Trailer</u>

Johnson argues that the district court erred in denying his motion to suppress the evidence seized from his trailer home because the warrant affidavit lacked sufficient corroboration of the CI's information.[1]

Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). "The task of the magistrate issuing a warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" that probable cause exists. <u>Id.</u> Under <u>Gates</u>'s totality-of-the-circumstances evaluation, "'veracity' and 'basis of knowledge' are no longer viewed as independent prerequisites to a finding of probable cause: a deficiency in one may be compensated for, in determining the overall reliability of the tip, by a strong

---

[1]A district court's ruling on a motion to suppress presents "a mixed question of law and fact." <u>United States v. Steed</u>, 548 F.3d 961, 966 (11th Cir. 2008). We review the district court's factual findings for clear error, construing all facts in the light most favorable to the prevailing party below, and its application of the law to those facts <u>de novo</u>. <u>Id.</u> Accordingly, we review "determinations of probable cause <u>de novo</u>, but we review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." <u>United States v. Talley</u>, 108 F.3d 277, 281 (11th Cir. 1997) (quotation marks omitted, omission in original).

5

showing as to the other, or by some other indicia of reliability such as corroborating evidence gathered by law enforcement." United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (quotation marks omitted).

Here, the district court did not err in concluding that Investigator Josh McAlister's affidavit provided a sufficient basis for finding probable cause to search Johnson's trailer home. McAlister averred that a CI, who had "proven to be reliable in the past," was at Johnson's residence within the last 48 hours and saw Johnson in possession of crack cocaine within that residence. McAlister swore that the CI had provided similar information that "resulted in numerous narcotics arrest[s] and convictions." Additionally, McAlister averred that: (1) over the past two years, the TCNTF, along with other state and federal agencies, "ha[d] been receiving information concerning narcotics being distributed from [Johnson's] residence"; and (2) Johnson had three outstanding Tallapoosa County arrest warrants for trafficking in cocaine.[2]

We reject Johnson's argument that additional corroborative details were needed to establish probable cause. According to McAlister's affidavit, the CI not

---

[2]Although McAlister's affidavit did not indicate as much, these three outstanding warrants were based on the three controlled buys McAlister conducted with Taylor in 2005. However, at the suppression hearing, McAlister testified that he briefly described to the issuing judge the details of the Johnson investigation, which TCNTF had been working on for several years, and the outstanding trafficking warrants.

only had proved reliable in the past, but also had provided the kind of information that had led to other narcotics arrests and convictions. Cf. Foree, 43 F.3d 1575-76 (explaining that general allegations of reliability that do not indicate whether the information provided was important or led to searches, arrests or convictions are entitled to only slight weight). Further, the CI's information was based on firsthand observation and included details such as when and where the CI saw Johnson in possession of cocaine. See Gates, 462 U.S. at 234, 103 S. Ct. at 2330 (explaining that explicit and detailed firsthand accounts by an informant are given "greater weight than might otherwise be the case"). And, the CI's information was corroborated by two years' of intelligence from law enforcement indicating Johnson was dealing drugs from his trailer home and by Johnson's three outstanding arrest warrants for cocaine trafficking. See Foree, 43 F.3d at 1576 (stating that police intelligence reports can corroborate the CI's information). Under the totality of the circumstances, the issuing judge "had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238-39, 103 S. Ct. at 2332 (quotation marks, ellipsis and brackets omitted). Thus, the district court did not err in denying the motion to suppress the evidence seized during the search of Johnson's trailer home.

2.      Confession

Johnson argues that the district court should have suppressed his confession because his Miranda rights waiver was the product of coercion and invalid.[3]

Under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), statements obtained during a custodial interrogation are inadmissible unless the defendant was first warned of his rights and knowingly waived those rights. United States v. Parr, 716 F.2d 796, 817 (11th Cir. 1983). An accused effectively waives his Miranda rights if he: (1) voluntarily relinquishes them as the product of a free and deliberate choice, rather than through intimidation, coercion or deception; and (2) makes his decision with the full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995). A waiver is effective where the "totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension." Id. (quotation marks omitted). The government has the burden to show by a preponderance of the evidence that the defendant made a knowing, voluntary and intelligent Miranda waiver. United States v. Farris, 77 F.3d 391, 396 (11th Cir. 1996). "An express written or oral statement of waiver . . . is usually strong proof of the validity of that waiver, but is

_____

[3]Johnson does not dispute that he was informed of his Miranda rights.

not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757 (1979).[4]

We find no error in the district court's determination that Johnson's Miranda waiver and subsequent confession were not coerced, but made knowingly, intelligently and voluntarily. Johnson was arrested, handcuffed and read his Miranda rights during the search of his trailer home at 15 Johnson Drive. Johnson's common law wife and their children were present, and the children were crying. Johnson's wife was handcuffed and detained for questioning, but was later released. Johnson was taken to the Alabama Bureau of Investigation ("ABI") office and his wife was taken to the TCNTF office for questioning.

While being transported to the ABI office, Johnson discussed with two investigators, Agents Darrell Armour and Tom Halasz, whether either his wife or his sister-in-law might be arrested or charged with a crime. Agent Armour told Johnson that his sister-in-law could be arrested for the cocaine found in her trailer. However, neither agent threatened to arrest or charge the women and did not promise Johnson anything in exchange for waiving his Miranda rights.

Approximately 30 to 45 minutes later, Investigator McAlister and Agent Halasz interviewed Johnson at McAlister's office. The officers reminded Johnson

---

[4]As to the waiver of Miranda rights, we review the district court's fact findings for clear error, but review de novo the application of the law to the facts. Farris, 77 F.3d at 396.

9

that Agent Halasz already had read him his rights and confirmed that Johnson understood his rights and was waiving them. Johnson acknowledged understanding his Miranda rights, agreed to waive them and then gave a statement.

During the interview, none of the officers discussed with Johnson the possible arrest of his wife or sister-in-law. Johnson told the officers that his sister-in-law was unaware of the cocaine stored in her trailer. Johnson's wife was not discussed at all. As they talked, Investigator McAlister typed up Johnson's statement on his computer. Johnson then read and signed the statement.

Given these facts, the district court did not err in determining that Johnson's waiver of his Miranda rights was not the result of intimidation, coercion or deception and that Johnson decided to waive his Miranda rights knowing the nature of those rights and the consequences of abandoning them. Contrary to Johnson's claim, Agent Armour's comment in the police car that Johnson's sister-in-law might be arrested for the cocaine found in her trailer was not deceptive or threatening, but merely a statement of a realistic possibility. Cf. United States v. Nash, 910 F.2d 749, 752-53 (11th Cir. 1990) (explaining that discussions of realistic penalties for failing to cooperate are normally insufficient to preclude free choice).[5] The other circumstances Johnson claims were coercive – his crying

---

[5]At the suppression hearing, Johnson testified that the officers said they would arrest his sister-in-law and wife if he did not cooperate. The magistrate judge did not credit this testimony.

children, the handcuffs, the battering down of his door – took place at the trailer home at least 30 minutes before he was interviewed at the ABI office.[6] Johnson does not point to any coercive circumstances during the interview when he was reminded of his <u>Miranda</u> rights, agreed to waive them and then gave a statement. Thus, the district court properly admitted Johnson's confession.

**B. Sufficiency of the Conspiracy Evidence**

To convict a defendant for conspiracy to possess with intent to distribute cocaine, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed, (2) the defendant knew of it, and (3) the defendant knowingly and voluntarily participated in it. <u>United States v. McDowell</u>, 250 F.3d 1354, 1365

---

Instead, the magistrate judge found that the agents "discussed with Johnson the possible arrest of his relatives." The magistrate judge quoted a portion of Agent Halasz's testimony that described as nonthreatening the "minor conversation" the officers had with Johnson that "other people could be arrested as well, and one of them being [Johnson's sister-in-law] Contessa Ford." On appeal, we view the evidence in the light most favorable to the government, and Johnson has given us no reason to disturb the magistrate judge's credibility findings. <u>See</u> <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749 (11th Cir. 2002) (explaining that a district court's credibility findings are conclusive on this Court unless they are "<u>exceedingly</u> improbable" or "unbelievable").

In any event, the magistrate judge also noted that the officers had probable cause to arrest Johnson's wife for possession of the marijuana found in the trailer she shared with Johnson and to arrest Johnson's sister-in-law for possession of the cocaine found in her trailer. A threat to arrest someone for whom the police have probable cause to arrest does not constitute coercion. <u>See</u> <u>Thompson v. Haley</u>, 255 F.3d 1292, 1297 (11th Cir. 2001) (concluding that police statements that suspect's girlfriend would be prosecuted unless defendant confessed were not coercive because police had probable cause to arrest her).

[6]Although Johnson does not claim he was still in handcuffs when he was interviewed, we note that the use of handcuffs does not establish coercion. <u>Shriner v. Wainwright</u>, 715 F.2d 1452, 1456 (11th Cir. 1983).

11

(11th Cir. 2001).  "[The] existence of an agreement in a conspiracy case is rarely proven by direct evidence that the conspirators formally entered or reached an agreement. . . . The more common method of proving an agreement is through circumstantial evidence."  United States v. Glinton, 154 F.3d 1245, 1258 (11th Cir. 1998).

The joint objective of distributing drugs "is missing where the conspiracy is based simply on an agreement between a buyer and a seller for the sale of drugs." United States v. Dekle, 165 F.3d 826, 829 (11th Cir. 1999).  However, where there is evidence of a continuing course of conduct between the buyer and seller "designed to result in the distribution of cocaine" the evidence is sufficient to sustain the conviction.  See United States v. Beasley, 2 F.3d 1551, 1560 (11th Cir. 1993) (involving seller who "fronted" cocaine to buyer several times over a short period and knew the buyer was reselling it); see also United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999) ("[A]greement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser").[7]

---

[7]We review a challenge to the sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor."  United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quotation marks and brackets omitted).  We will affirm a guilty verdict unless no reasonable trier of fact could have found guilt beyond a reasonable doubt.  United States v. Toler, 144 F.3d 1423, 1428 (11th Cir. 1998).

12

Johnson argues that the government's evidence proved only buyer-seller relationships and not an agreement to distribute drugs. We disagree.[8]

The government presented evidence that Taylor, Dwight Moss, Frank Clayton, Demetric Cox and Kerry Jackson purchased crack and powder cocaine from Johnson on a regular basis for as much as five years. Taylor, Moss and Cox testified that Johnson fronted the drugs to them, and they paid Johnson back from the proceeds. This evidence amply established more than a buyer/seller relationship and was sufficient for a reasonable jury to conclude that Johnson had a continuing relationship with these individuals to distribute drugs.

In addition, several witnesses testified that Johnson sometimes used runners who delivered drugs for him and that Johnson had a business partner named Doug Burton, who supplied the cocaine. A reasonable jury could infer from this evidence that Johnson had an agreement with Burton and the runners to assist him in the drug distribution. Several witnesses also testified that they saw Johnson sell drugs to other drug dealers, heard details of Johnson's supply arrangements directly from Johnson and observed friends and family allowing Johnson to use

---

[8]The heading in Johnson's appeal brief states that his sufficiency of the evidence challenge is "as to all counts." However, his substantive arguments concern only the sufficiency of the evidence to sustain his conspiracy conviction and do not address his other convictions. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (concluding that an issue was abandoned where defendant's brief made only "passing references" to the issue).

13

their residences to cook crack cocaine and distribute drugs. Viewing this evidence in the light most favorable to the jury's verdict, a reasonable juror could have found beyond a reasonable doubt that Johnson entered into an agreement to distribute crack and powder cocaine.

Johnson argues that his co-conspirators' testimony was insufficient to support the jury's verdict because they were charged with crimes and had a motive for testifying against him. This argument is unavailing. Credibility determinations fall within the exclusive province of the jury unless the testimony is "incredible as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). The co-conspirators' motives for testifying do not render their testimony unbelievable on its face. See id.

C.    **Leadership Role Enhancement**

Under U.S.S.G. § 3B1.1(c), a defendant's offense level is increased by two levels when "the defendant was an organizer, leader, manager, or supervisor" of criminal activity that involved fewer than five participants and was not otherwise extensive. U.S.S.G. § 3B1.1(c). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v.

14

Jiminez, 224 F.3d 1243, 1251 (11th Cir. 2000); see also U.S.S.G. § 3B1.1(c), cmt. n. 2.[9]

Johnson asserted influence and control over Taylor, Moss and Cox by fronting drugs for them to sell and requiring them to pay him out of the proceeds. Moss testified that when he failed to pay Johnson back in full, Johnson stopped fronting him drugs. Johnson also sometimes used runners to deliver drugs for him. Moss testified that at one point he worked as a runner for Johnson. Given this evidence, we cannot say the district court clearly erred in imposing a two-level leadership role enhancement.

**AFFIRMED.**

---

[9]A defendant's role under U.S.S.G. § 3B1.1 is a factual finding we review for clear error. United States v. Ramirez, 426 F.3d 1344, 1355 (11th Cir. 2005).