[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14930
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cr-80012-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EZEKIEL FLOWERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 12, 2013)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Ezekiel Flowers appeals his conviction and sentence of 188 months' imprisonment for one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(e)(1). After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Investigation and Charge

On January 2, 2012, a man robbed the Alabama Georgia Grocery Store in Palm Beach County, Florida and shot and killed the store owner in the course of the robbery. Video surveillance showed the suspect wearing a white and green plaid shirt, a hoodie-style sweatshirt, dark-colored basketball shorts with a white stripe, black tennis shoes, and a white bandana over his face. From the surveillance video, it appeared that the suspect had dreadlocks and used a revolver.

On January 3, 2012, while investigating the crime, the Palm Beach County Sheriff's Office received a tip from an informant, Tameka Glover, who lived next door to Defendant Flowers and was his ex-girlfriend. Glover informed police that on January 1, 2012, the day before the robbery-homicide, Flowers called her and asked her about the hours of operation and number of employees at the Alabama Georgia Grocery Store. The next day, after learning of the robbery, Glover saw Flowers wearing a green plaid shirt. Later, Glover saw Flowers wearing a hoodie-

style sweatshirt, blue or black basketball shorts with a white stripe and black tennis shoes.

On this second sighting, Glover and Flowers spoke.  Flowers told Glover that he no longer needed the information about the Alabama Georgia Grocery Store "because he had already handled it."  When Glover asked, "So you did that," Flowers responded that it had not gone the way it was supposed to.  Approximately one week before she spoke with police, Glover saw Flowers in her yard with a black semiautomatic handgun.

Based on this information, Detective Christopher Caris executed an affidavit and investigators obtained a search warrant for the home Flowers shared with his parents.  During the search, investigators recovered a black semiautomatic handgun and some ammunition.

Investigators took Flowers into custody and read him his Miranda rights,[1] which he waived.  Investigators questioned Flowers about the robbery-homicide as well as the gun found at his home.  During questioning, Flowers readily admitted asking Glover about the grocery store and conceded that he had planned to rob the grocery store.  Flowers claimed, however, that someone else had beaten him to it. Flowers also admitted handling and cleaning a black and chrome semi-automatic handgun within the past month, but claimed he had returned it to its owner.  When

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

investigators asked Flowers about the handgun found in his home, he initially stated that the gun was not his and that the gun was not "dirty" (i.e., had not been used in a crime). On further questioning, however, Flowers stated that he would not talk about that gun anymore. The investigators continued questioning Flowers, and, in response, Flowers made several statements about the gun found in his home, including that he had handled the gun.

Subsequently, police apprehended another suspect for the Alabama Georgia Grocery Store robbery-homicide. The suspect confessed and was convicted of the crime, and police cleared Flowers of all involvement. Because Flowers was previously convicted of a felony offense and had not had his right to possess firearms restored, he was charged with possession of a firearm by a convicted felon.

## B.    Pretrial Evidentiary Motions

Prior to trial, Flowers moved to suppress: (1) the evidence found in his home on the grounds that Detective Caris's affidavit, supporting the search warrant, contained material omissions and lacked probable cause; and (2) Flowers's post-Miranda statements about the gun found in his home because he had made them to police after he had invoked his right to silence. Flowers also filed a motion in limine to preclude the government from introducing evidence of the Alabama Georgia Grocery Store robbery-homicide or of Flowers's criminal history on the

4

grounds that this evidence was irrelevant and unduly prejudicial under Federal Rule of Evidence 403.

After hearing argument, a magistrate judge recommended: (1) denying Flowers's motion to suppress the evidence found in his home and his request for an evidentiary hearing pursuant to Franks;[2] (2) granting in part and denying in part Flowers's motion to suppress his post-Miranda statements. The magistrate judge concluded that Flowers had selectively invoked his right to silence when he stated to investigators that he would not talk anymore about the gun found in his home and that any statements about the gun after that point should be excluded.

The district court adopted the magistrate judge's recommendations. The district court denied the motion to suppress the evidence found pursuant to the search warrant. The district court granted in part the motion to suppress Flower's post-Miranda statements, but found admissible Flowers's statements about the gun made before he invoked his right to silence.

As for Flower's motion in limine, the district court ruled, inter alia, that: (1) evidence of Flowers's prior conviction for aggravated assault with a deadly weapon was admissible under Federal Rule of Evidence 404(b); and (2) "some discussion" of the Alabama Georgia Grocery Store robbery-homicide would have to come in at trial because the investigation into the robbery and Flowers's gun

---

[2]Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978).

possession were so intertwined, but that the court could not "anticipate every question that might be asked."

## C.    Trial

Prior to trial, the parties agreed to several stipulations, which were read to the jury.  Among other things, the parties agreed: (1) that Flowers was convicted of a felony offense in July 2007, following which his right to possess a firearm had not been restored; (2) Flowers had been a person of interest in the Alabama Georgia Grocery Store robbery-homicide that occurred on January 2, 2012, and, on January 5, 2012, his home was searched and he was interviewed as part of that investigation, but Flowers had since been cleared and was no longer a suspect; and (3) Flowers had a prior felony conviction that involved a firearm.

In addition, the jury heard the following evidence: (1) in July 2010, Bernadette Jackson, the girlfriend of Flowers's brother, left her .40 caliber handgun in Flowers's home; (2) Detective Roger Wong Won executed the search warrant at Flowers's home and found one live round of ammunition and a .40 caliber handgun with eight rounds in the magazine in a dresser drawer in a bedroom; (3) a crime scene investigator took swabs from the handgun to test for DNA; (4) Detective John Van Houten took DNA samples from Flowers; (5) a forensic expert analyzed the DNA swabs from Flowers and from the handgun and

6

determined that Flowers matched the DNA profile obtained from the handgun and magazine.

In addition, Detective Harvey Atkinson testified as the lead investigator of the Alabama Georgia Grocery Store robbery-homicide.  Detective Atkinson stated that, early in the investigation, Flowers was a person of interest, but that he was later cleared of having anything to do with the robbery-homicide.  While Flowers was still a person of interest, police officers searched his home, and Detective Atkinson interviewed him.

Detective Atkinson stated that the interview was videotaped.  Without Flowers renewing the objections raised in either his motion to suppress or his motion in limine, the government played a number of clips from the interview for the jury and asked Detective Atkinson to explain what was taking place in the clips.  Detective Atkinson testified, inter alia, that: (1) Flowers signed a Miranda card after being read his Miranda rights; (2) the interview continued with a general discussion of the robbery and homicide and Flowers's alibi; (3) Flowers admitted asking Glover about the Alabama Georgia Grocery Store and that he had planned to rob the Alabama Georgia Grocery Store; (4) Flowers told Detective Atkinson his date of birth, which Detective Atkinson testified matched the date of birth on pharmacy receipts in Flowers's name that were found in the same room with the handgun; (5) Flowers admitted cleaning and handling a black and chrome gun, but

7

Detective Atkinson testified that the gun found in Flowers's home was only black; (6) when Detective Atkinson asked Flowers whether the gun found in his home belonged to his parents, Flowers replied, "[T]his is irrelevant"; (7) Flowers further discussed the handgun found in his home by stating, "[T]he gun is clean.  The gun is—it's not dirty," which Detective Atkinson explained meant that the gun had not been used in a crime; and (8) Flowers also discussed a revolver with Detective Atkinson.

The jury found Flowers guilty of being a felon in possession of a firearm.

**D.    Sentencing**

The Presentence Investigation Report ("PSI") determined that Flowers qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4 because he was previously convicted of robbery, felony battery and two separate offenses of aggravated assault with a deadly weapon.  See 18 U.S.C. § 924(e)(1) (providing that a person who has three previous convictions for violent felonies or serious drug offenses is subject to a mandatory minimum sentence of fifteen years' imprisonment).  Flowers objected to the armed career criminal enhancement, arguing, inter alia, that the ACCA violated the Sixth Amendment by requiring district courts to find facts beyond the fact of conviction.

At sentencing, the district court overruled Flowers's objection to the PSI. Based on Flowers's armed career criminal designation, the district court calculated an advisory guidelines range of 188 to 235 months and concluded that the applicable statutory mandatory minimum under the ACCA was 180 months. The district court imposed a 188-month sentence. Flowers appealed.

## II.  DISCUSSION

On appeal, Flowers contends that the district court erred in: (1) denying his motion to suppress evidence obtained from his home and for a Franks hearing; (2) denying his motion to suppress his post-Miranda custodial statements; (3) admitting evidence of his past crimes and acts; and (4) sentencing him as an armed career criminal based on facts found by a judge rather than the jury. For the reasons that follow, none of Flower's arguments has merit.

### A.    Request for a Franks Hearing

Flowers argues that he made a sufficient showing to warrant a Franks hearing on his motion to suppress the evidence found in his house.[3]

To be entitled to a Franks hearing, a defendant must make a "substantial preliminary showing" establishing: (1) that the affiant deliberately or recklessly

---

[3]Although generally we review a district court's denial of a request for an evidentiary hearing for an abuse of discretion, we have not stated a precise standard of review for the denial of a request for a Franks hearing.  United States v. Sarras, 575 F.3d 1191, 1218 n.37 (11th Cir. 2009).  We need not resolve this issue, however, because even under a more exacting de novo standard of review, we find no error.

included a false statement, or failed to include material information, in the warrant affidavit; and (2) that the allegedly false statement or omission was necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978); United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006). "Allegations of negligence or innocent mistake are insufficient." Franks, 438 U.S. at 171, 98 S. Ct. at 2684. Moreover, the defendant's attack "must be more than conclusory" and the allegations of deliberate falsehood or reckless disregard for the truth "must be accompanied by an offer of proof." Id. at 171, 98 S. Ct. at 2684. "Even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." United States v. Sarras, 575 F.3d 1191, 1218 (11th Cir. 2009) (quotation marks and brackets omitted). The defendant bears the burden of showing that probable cause would have been lacking absent those omissions. Id.

Flowers's motion argued that the following facts were known to police, but were omitted from Detective Christopher Caris's affidavit: (1) as early as January 3, 2012, investigators believed the perpetrator had dreadlocks; (2) on January 4, 2012, the day the police spoke with Glover, they had additional suspects who resembled the robbery suspect; (3) Glover and Flowers had a prior romantic relationship that included allegations of domestic violence; (4) there was a $25,000 reward for tips leading to the arrest of the robbery suspect; (5) video surveillance

10

of the robbery showed the suspect using a long-barrel revolver, not a semi-automatic handgun like the one Glover told investigators she saw Flowers holding; (6) Glover had an extensive criminal history of juvenile offenses as well as food stamp fraud committed as an adult; and (7) Glover saw Flowers with a handgun outside her own home, not inside Flowers's home.

Flowers failed to make a substantial preliminary showing that Detective Caris, the affiant, intentionally or recklessly omitted any of these facts from the search warrant affidavit. Flowers argued only that the alleged omitted facts were known to the police at the time the affidavit was sworn to, and that their absence implied that their omission was either intentional or reckless. Franks requires the defendant to offer proof that the affiant had the requisite intent. See Franks, 438 U.S. at 171, 98 S. Ct. at 2684. Flowers, however, provided no evidence that established Detective Caris either intentionally or recklessly omitted these facts.

Flowers argues he needed to cross-examine Detective Caris to obtain such proof. Franks explicitly rejected this approach. Rather, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." Id. at 171, 98 S. Ct. at 2684. As examples of supporting proof, the Franks Court identified "affidavits or sworn or otherwise reliable statements of witnesses," apart from the warrant affidavit. Id.; see also Arbolaez, 450 F.3d at 1294 (concluding that

11

defendant did not satisfying the substantiality requirement for a <u>Franks</u> hearing because he relied on hearsay statements and did not submit affidavits or other sworn statements).

Even assuming <u>arguendo</u> Flowers showed the requisite intent, he failed to show that the omitted facts would have precluded a finding of probable cause. For the reasons discussed below, the facts in the affidavit were sufficient to support the district court's probable cause determination. None of the omitted facts altered the fact that Glover's first-hand interactions and observations of Flowers shortly before and shortly after the robbery-homicide indicated a likelihood that he was involved in the crime and that evidence related to the crime could be found in his home. The charged omissions would not have significantly undermined the probable cause determination, and the district court did not err in concluding that, even with these omissions, the affidavit established probable cause. Thus, Flowers failed to make the substantial preliminary showing needed for a <u>Franks</u> hearing, and the district court did not err in declining to hold such a hearing.

**B.    Motion to Suppress Evidence from Flowers's Home**

Flowers contends that the affidavit supporting the search warrant failed to establish probable cause because it did not contain independent corroboration of Glover's tip or explain her prior relationship with Flowers.[4]

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006) (quotation marks omitted). "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S. Ct. 2317, 2329 (1983). To determine whether probable cause exists to issue a search warrant, the magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238, 103 S. Ct. at 2332. The "totality-of-the-circumstances analysis . . . permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." Id. at 234, 103 S. Ct. at 2330. An

---

[4]Because a district court's denial of a motion to suppress is a mixed question of law and fact, we review the legal rulings de novo and the findings of fact for clear error. United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007).

informant's tip, however, does not need to be subject to independent police corroboration in every case.  United States v. Brundidge, 170 F.3d 1350, 1353 (11th Cir. 1999).

Here, the district court did not err in determining the search warrant was supported by probable cause.  Detective Caris's affidavit established that: (1) one week before the robbery-homicide, Glover saw Flowers holding a handgun; (2) the day before the robbery-homicide, Flowers asked Glover about the grocery store's hours and number of employees; (3) on the day of, but after, the robbery-homicide, Glover observed Flowers wearing clothing very similar to that worn by the robbery-homicide suspect as seen on the store's surveillance video; (4) at that time, Flowers told Glover that he no longer needed the information about the grocery store because "he had already handled it," and, when Glover asked whether he "did that," Flowers responded that it had not gone the way it was supposed to and that "things went wrong"; (5) during the conversation, Flowers told Glover he was looking at cars passing by and appeared nervous when a police car drove by; and (6) since talking with Glover, Flowers had not left his home.

These facts in the search warrant are sufficient to support the district court's determination that there was a fair probability of finding evidence in Flowers's home related to the Alabama Georgia Grocery Store robbery-homicide.  The facts in the search warrant were based on first-hand, detailed information provided by a

14

neighbor-informant directly to law enforcement that indicated substantial ties between Flowers and the Alabama Georgia Grocery Store robbery-homicide. See Gates, 462 U.S. at 234, 103 S. Ct. at 2330 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of the alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.").

Flowers cites United States v. Foree for the proposition that the circumstances of that case "represent the outer limits of probable cause" and involved more reliable information than was present in this case. See Foree, 43 F.3d 1572, 1577 n.6 (11th Cir. 1995) (stating in a footnote that "this is a close case, demarcating the outer limits of probable cause in this context").

Flowers's reliance on Foree is misplaced. In Foree, this Court concluded only that, under the totality of the circumstances present in that case, there was a substantial basis to support the finding of probable cause. Id. at 1576-77. As this Court noted in Brundidge, however, "once Foree concluded that probable cause existed on the circumstances before it, the Foree court could say nothing binding as precedent about the 'outer limits' of probable cause." Brundidge, 170 F.3d at 1353 n.2.

C.    **Motion to Suppress Flowers's Custodial Statements**

Flowers challenges the district court's denial of his motion to suppress his post-<u>Miranda</u> custodial statements to law enforcement.  For the first time on appeal, Flowers argues that the interviewing officers effectively rendered his statements involuntary by concealing the true purposes of the questioning.  Specifically, Flowers contends that the officers concealed their interest in the handgun while questioning him about the robbery-homicide and that this deception prevented Flowers from making a knowing waiver of his right to remain silent.

Because Flowers did not raise before the district court the argument that his statements to law enforcement during his interrogation were involuntary, we review his claim only for plain error.  See <u>United States v. Young</u>, 350 F.3d 1302, 1305 (11th Cir. 2003) (reviewing for plain error grounds to suppress evidence not raised in the district court).  Flowers has not shown error, much less plain error.

Flowers does not dispute that he was advised of and then waived his <u>Miranda</u> rights.  Flowers contends only that his waiver was involuntary because law enforcement did not disclose the full nature of their investigation.  However, the failure to inform an individual of the subject matter of the interrogation affects "only the wisdom of a <u>Miranda</u> waiver, not its essentially voluntary and knowing nature" and thus does not render the waiver constitutionally invalid.  See <u>Colorado v. Spring</u>, 479 U.S. 564, 576, 107 S. Ct. 851, 859 (1987) ("[A] valid waiver does not require that an individual be informed of all information useful in making his

16

decision or all information that might affect his decision to confess." (internal brackets and alterations omitted)).

## D.    Rule 404(b) Evidence

Flowers argues that the district court should have excluded evidence that Flowers was a suspect in the Alabama Georgia Grocery Store robbery-homicide and that during police questioning Flowers admitted he had planned to rob the Alabama Georgia Grocery Store. Flowers contends this evidence was improperly admitted under Federal Rules of Evidence 403 and 404(b) because its probative value was low compared to the government's other evidence, including DNA evidence, and was outweighed by the undue prejudice it caused him.[5]

Under Federal Rule of Evidence 404(b), extrinsic evidence of "a crime, wrong, or other act" cannot be admitted "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Evidence is not considered "extrinsic," and is therefore not barred by Rule 404(b), if it is "necessary to complete the story of the crime," or is "inextricably intertwined with the evidence regarding the charged

---

[5]Flowers raised his evidentiary objection in his pretrial motion in limine, but failed to renew his objection when the evidence was presented at trial during Detective Atkinson's testimony. Accordingly, our review of Flowers's Rule 403 argument is limited to plain error. See United States v. Brown, 665 F.3d 1239, 1247 (11th Cir. 2011) ("[T]he overruling of a motion in limine does not suffice for preservation of an objection on appeal." (quotation marks omitted)).

17

offense."  United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998)
(quotation marks omitted).

To be admissible, Rule 404(b) evidence must (1) be relevant to an issue
other than the defendant's character, (2) be sufficiently proven to allow a jury to
find that the defendant committed the extrinsic act, and (3) possess probative value
that is not substantially outweighed by its undue prejudice under Rule 403.  United
States v. Sanders, 668 F.3d 1298, 1314 (11th Cir. 2012).  Rule 403 permits a court
to "exclude relevant evidence if its probative value is substantially outweighed by
a danger of one or more of the following:  unfair prejudice, confusing the issues,
misleading the jury, undue delay, wasting time, or needlessly presenting
cumulative evidence." Fed. R. Evid. 403.  In reviewing the third prong of Rule
404(b) admissibility under Rule 403, we "look at the evidence in a light most
favorable to its admission, maximizing its probative value and minimizing its
undue prejudicial impact."  United States v. Edouard, 485 F.3d 1324, 1344 n.8
(11th Cir. 2007) (quotation marks omitted).

The district court did not commit plain error by admitting Detective
Atkinson's testimony that Flowers initially was a suspect in the robbery-homicide.
First, Flowers stipulated that he was initially a suspect in the robbery-homicide,
arguably inviting any Rule 403 error with respect to this evidence.  See United
States v. Jernigan, 341 F.3d 1273, 1289-90 (11th Cir. 2003) (concluding that by

18

stipulating to the admission of hearsay statements, the defendant invited any error that resulted from their admission). Given Flowers's stipulation, it is hard to see how he was prejudiced, much less unduly prejudiced, by this portion of Detective Atkinson's testimony. Second, as the district court concluded, the fact that Flowers was initially a suspect in the robbery-homicide was not "extrinsic" evidence prohibited by Rule 404(b) because it was inextricably intertwined with the facts of the firearm-possession case and was needed to explain basic facts, such as why the police searched Flowers's home and interviewed him. See McLean, 138 F.3d at 1403.

With respect to Flowers's admission to Detective Atkinson that he had planned to rob the grocery store, even if we assume Flowers satisfied the first two requirements of the plain error test, Flowers has not shown that any error affected his substantial rights. See United States v. Turner, 474 F.3d 1265, 1276-80 (11th Cir. 2007) (explaining that under the third prong of the plain error test the defendant must show that but for the evidentiary error the outcome of trial would have been different). As Flowers concedes, the government's case against him was very strong, consisting of: (1) DNA evidence linking Flowers to the firearm found in a bedroom of his home; (2) testimony establishing that the bedroom in which the firearm was found was his; (3) numerous un-objected-to custodial statements that indicated he had possessed a gun; and (4) Flowers's stipulation that

19

he was a felon and had not had his rights restored.  This evidence, independent of the challenged evidence of his plan to rob the grocery store, amply supported the jury's verdict.

### E.     Sixth Amendment Sentencing Claim

Flowers argues that the sentencing court's finding of his predicate ACCA convictions violated the Sixth Amendment because it raised his mandatory minimum sentence to fifteen years.  Flowers contends that the Supreme Court's decision in Alleyne v. United States, 570 U.S. ___, 133 S. Ct. 2151 (2013), may require reversal of his sentence.

In Alleyne, the Supreme Court overruled its prior precedent in Harris v. United States, 536 U.S. 545, 122 S. Ct. 2406 (2002).  Harris had held that "brandishing" a firearm for purposes of 18 U.S.C. § 924(c)(1)(A)(ii)—which triggered an increased mandatory minimum sentence—was a sentencing factor, rather than an element of the crime, which a judge could find at sentencing without violating the defendant's Sixth Amendment rights.  Harris, 536 U.S. at 556, 568, 112 S. Ct. at 2414, 2420.  In Alleyne, the Supreme Court concluded that "Harris drew a distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum," but "this distinction is inconsistent with our decision in Apprendi v. New Jersey, 530 U.S. 446, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000), and with the original meaning of the Sixth Amendment."

20

<u>Alleyne</u>, 570 U.S. at ___, 133 S. Ct. at 2155.  Thus, the Supreme Court in <u>Alleyne</u> held that any fact that increases a defendant's mandatory minimum sentence is an element of the crime that must be found by a jury.  <u>See</u> id. at ___, 133 S. Ct. at 2155.

Flowers's reliance on <u>Alleyne</u> is unavailing.  <u>Alleyne</u> did not address prior-conviction sentencing enhancements.  Instead, <u>Alleyne</u> merely extended the rationale of <u>Apprendi</u>, which itself noted that the Sixth Amendment did not require "the fact of a prior conviction" to be submitted to a jury and proved beyond a reasonable doubt.  <u>See</u> <u>Apprendi</u>, 530 U.S. at 490, 120 S. Ct. at 2362-63 ("<u>Other than the fact of a prior conviction</u>, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); <u>see also</u> <u>Almendarez-Torrez v. United States</u>, 523 U.S. 224, 247, 118 S. Ct. 1219, 1233 (1998) (holding that, for sentencing enhancement purposes, a defendant's prior conviction need not be alleged in the indictment or submitted to the jury and proved beyond a reasonable doubt).  In fact, the <u>Alleyne</u> Court explicitly stated that it was not revisiting "the narrow exception to this general rule for the fact of a prior conviction."  <u>Alleyne</u>, 570 U.S. at ___, 133 S. Ct. at 2160 n.1.  Flowers has not shown that his ACCA-enhanced fifteen-year mandatory minimum violated his Sixth Amendment rights.

**AFFIRMED.**

21