[Cite as *State v. Gillette*, 2018-Ohio-5186.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0115** |
| CRAIG S. GILLETTE, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CR 00471.

Judgment: Affirmed.


*Dennis Watkins*, Trumbull County Prosecutor, *Diane Barber*, Assistant Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Rhys B. Cartwright-Jones*, 42 North Phelps Street, Youngstown, OH 44503 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1}     Appellant, Craig S. Gillette, convicted of two counts of rape and three counts of unlawful sexual conduct with a minor, appeals challenging the validity of the indictment, the denial of his motion to suppress statements, the admissibility of expert witness testimony, and the weight of the evidence. We affirm.

{¶2}     The victim of all five offenses, M.S., born in July of 2000, is the youngest of

the Michelle Streeter and Shawn Setting children. In August 2012, Michelle and Shawn separated and ultimately divorced. The two years following separation, M.S. alternated between living with her mother and father.

{¶3} Upon separation, Michelle moved to an apartment in Warren, Ohio with her daughter, Alexis, M.S.'s older sister. Initially, M.S. lived with her father, but visited her mother often at Alexis's apartment.

{¶4} Alexis's friend, Brittany Brooks, lived with her children in the same apartment complex. Brittany was dating appellant, who would often spend the night at her place. When M.S. visited her mother she would regularly go to Brittany's to visit and babysit, and it is there that she met appellant.

{¶5} In the Fall of 2012 when appellant and M.S. were alone in Brittany's living room, the two engaged in consensual vaginal intercourse. The timing stood out in M.S.'s mind because it was when she began to go through puberty.

{¶6} Over the ensuing weeks, appellant began a sexual relationship with Michelle. Briefly, between early December 2012 until late January 2013, Michelle rented and lived at a home in Bristolville, Ohio with appellant and M.S.

{¶7} M.S. testified that she and appellant engaged in vaginal intercourse while they were alone at the Bristolville home. M.S. does not recall where her mother was, but recalls her sibling being at a local library. M.S. pinpointed the encounter as occurring near Christmas as the home was decorated for the holidays.

{¶8} After vacating the Bristolville home, Michelle moved back to Alexis's apartment and M.S. moved back to her father's residence. Just as before, M.S. continued to visit her mother regularly at her apartment and would go over to Brittany's to visit and

2

babysit.

{¶9} While living with her father during the first nine months of 2013, M.S. was groped by an older brother on a continuing basis. As a result, in late September 2013, M.S. submitted to a full physical examination at a child advocacy facility center in Youngstown, Ohio. M.S. testified that the examination made her nervous because she and appellant had vaginal intercourse two days before, and she was worried her mother would find out that she was sexually active.

{¶10} In answering questions during her physical examination, M.S. said she was not sexually active. In examining M.S.'s genitals and hymen, the nurse practitioner found no injury or abnormality, but the hymen exam was incomplete as M.S. was menstruating. The nurse practitioner asked M.S. to return for further examination at a later date, but M.S. convinced her mother not to schedule a follow up.

{¶11} The last encounter between M.S. and appellant was late October 2013 and included vaginal intercourse and cunnilingus. M.S. pinpointed the time frame as near Halloween recalling the costume she wore when she went out with her friends.

{¶12} M.S.'s relationship with appellant continued until sometime in 2014 when appellant and Brittany moved. M.S. did not disclose the nature of her relationship with appellant to anyone until April 2016 when she told her aunt, who in turn told Michelle, who in turn contacted the Warren City Police Department. M.S. was interviewed twice by Detective Nicholas Carney. During the first interview, without specifics, M.S. said that she and appellant had sexual intercourse approximately 30 times. During a second interview three months later, M.S. pinpointed the four specific instances previously discussed and then estimated that she and appellant had sexual intercourse over 100

3

times.

{¶13} Shortly after the second interview, appellant agreed to accompany Carney and another officer to the city police department for questioning. In the interview room, appellant executed a written waiver of his Miranda rights. After Carney informed appellant of the accusations, he denied ever engaging in sexual conduct with M.S. However, appellant later made incriminating comments. Specifically, after invoking his right to an attorney, appellant offhandedly said he "figured" it was just a "matter of time" before "all this would've came out." At the conclusion of the interview, Carney drove him back to the Brook's residence.

{¶14} In July 2016, the grand jury indicted appellant on two counts of rape, first-degree felonies under R.C. 2907.02(A)(1)(b), and three counts of unlawful sexual conduct with a minor, third-degree felonies under R.C. 2907.04(A) & (B)(3). Both rape counts stem from consensual intercourse when M.S. was twelve years old. The "unlawful sexual conduct" counts stem from consensual intercourse and cunnilingus when M.S. was between the ages of thirteen and sixteen, with appellant being at least ten years older.

{¶15} The state called two expert witnesses at trial: a physician specializing in pediatrics and child sexual abuse cases, and the nurse practitioner who examined M.S in 2013. The scope of the physician's direct examination was that delayed and incremental disclosure by child sexual abuse victims is common, and M.S.'s normal examination does not rule out sexual activity. The nurse practitioner's testimony regarding the normal examination was similar.

{¶16} The jury found appellant guilty on all five counts. Appellant was sentenced to consecutive terms of ten years to life on the two rape counts. On the three unlawful

sexual conduct with a minor counts, the court imposed sixty-month terms. One term is consecutive to the two consecutive rape terms. The other two terms are concurrent to each other and concurrent to all the other terms for an aggregate sentence of twenty-five years to life.

{¶17} He assigns the following error:

{¶18} "[1.] The trial court erred in taking 'expert testimony' tantamount to truth propensity testimony.

{¶19} "[2.] The indictment at bar was overly vague as to its date-of-offense allegations.

{¶20} "[3.] The trial court erred in denying [appellant's] motion to suppress, insofar as the police took his statements in violation of the Fifth Amendment by means of trickery and deceit.

{¶21} "[4.] The jury returned a verdict against the manifest weight of the evidence."

{¶22} Under his first assignment, appellant maintains that the trial court erred in allowing the experts to testify. He argues their testimony was not admissible because both merely restated the victim's testimony, improperly enhancing her credibility.

{¶23} As a general proposition, a doctor is permitted to testify as an expert as to whether a child has been sexually abused. *State v. Britta*, 11th Dist. Lake No. 2009-L-017, 2010-Ohio-971, ¶65, quoting *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). However, a doctor cannot express an opinion concerning the veracity of the allegations. *Id.* Accordingly, if a doctor's finding of sexual abuse is based solely upon his review of the child's statements, the testimony is not admissible because it is merely his assessment of the child's credibility, a question to be left to the jury. *State v.*

5

*Schewirey*, 7th Dist. Mahoning No. 05 MA 155, 2006-Ohio-7054, ¶43-50.

**{¶24}** Here, appellant mischaracterizes the testimony of the experts. During direct testimony, neither stated an opinion as to the veracity of M.S.'s allegations against appellant or whether he sexually abused her. The state limited the scope of the physician's direct testimony to explaining why some child victims delay in disclosing sexual abuse and, like the nurse practitioner, explaining why a normal physical exam does not mean that sexual intercourse has not occurred.

**{¶25}** In response to a defense question on cross-examination, the physician noted that, as part of his written report, he opined that M.S.'s allegations "describes events that are highly concerning for sexual abuse." However, the state did not elicit any testimony on this point and did not move for admission of the report. Consequently, the reference to the opinion occurred due to defense counsel's question. Furthermore, given the overwhelming evidence presented by the state, the sole reference did not result in the denial of a fair trial.

**{¶26}** The state did not use expert testimony as an improper means of bolstering the victim's credibility. Appellant's first assignment is without merit.

**{¶27}** Under his next assignment, appellant maintains that the two rape counts should have been dismissed because the time frame in the indictment is too broad. He notes that the first rape count alleges that vaginal intercourse occurred during "the Fall of 2012," while the second count states that vaginal intercourse act occurred in "December of 2012." Noting the proximity of the time frames, appellant argues that the two counts are "carbon copies" and, therefore, he cannot be twice convicted.

**{¶28}** Appellant concedes that he failed to object to the indictment.

{¶29} "Pursuant to Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' Plain error does not exist unless 'but for the error, the outcome of the trial clearly would have been otherwise.' *State v. Long* (1978), 53 Ohio St.2d 91, 97. Notice of plain error is to be taken 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.' *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, ¶11 * * *." *State v. Sias*, 12th Dist. Madison Nos. CA2010-01-001 and CA2010-02-003, 2010-Ohio-3566, ¶23.

{¶30} "An individual accused of a felony is entitled to an indictment setting forth 'the nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment of the United States Constitution. The purpose of an indictment is twofold. By compelling the government to aver all material facts constituting the essential elements of an offense, an accused is afforded adequate notice and an opportunity to defend. See *Redmond v. State* (1878), 35 Ohio St. 81, 82-83; *Holt v. State* (1923), 107 Ohio St. 307, 140 N.E. 349. An indictment, by identifying and defining the offense, also enables an accused to protect himself from any future prosecutions for the same offense. See *Harris v. State* (1932), 125 Ohio St. 257, 181 N.E. 104." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985).

{¶31} In relation to the time and date of an offense, precision is not required to provide adequate notice. *Sellards.* "A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not *per se* impermissible or necessarily fatal to a prosecution." *Id.* at 171

{¶32} The difficulty of providing precise dates has especially been recognized in child sexual abuse cases. Hence, "'[a]n allowance for reasonableness and inexactitude

7

must be made for such cases because many child victims are unable to remember exact dates and times * * *.'" *State v. Gomez*, 11th Dist. Ashtabula No. 2017-A-0002, 2017-Ohio-8146, ¶26, quoting *State v. Neal*, 2016-Ohio-64, 57 N.E.3d 272, ¶26-27 (4th Dist.).

{¶33} In *Gomez*, the accused was indicted on seven rape counts and one count of gross sexual imposition. The eight charges pertained to two child victims. As to six counts, the indictment alleged that the offenses occurred at some point within a six-month period. In relation to the remaining two counts, the indictment cited a nine-month period. In affirming the denial of a motion to quash the indictment, we found the time frames sufficient to notify the accused of the charges against him, thereby enabling him to defend against the charges and protect himself from a subsequent prosecution for the same crimes. *Id.* at ¶27. Here, the 90-day and 31-day time frames for the two rapes are significantly less than those in *Gomez.*

{¶34} Moreover, consistent with M.S.'s testimony, the state's bill of particulars informs that the first rape count occurred at Brittany's apartment in Warren, Ohio, and the second rape count occurred at Michelle's home in Bristolville, Ohio. Appellant has, therefore, failed to establish error.

{¶35} As a separate argument, appellant contends that the second and third counts of unlawful sexual conduct with a minor are "carbon copies" of each other because both allege that the crimes occurred in October 2013. However, in the bill of particulars, the state clearly explained that although the offenses occurred as part of one episode, they are based upon distinct sexual acts: vaginal intercourse and cunnilingus. To this extent, the state did not twice charge for the same act.

{¶36} Since the indictment and bill of particulars give appellant adequate notice

8

of the charges against him, thereby enabling him to both present a defense and protect from future prosecutions for the same offenses, his second assignment lacks merit.

{¶37} Under his third assignment, appellant contends that his statements to Detective Carney were not made knowingly or voluntarily because the detective did not tell him of the subject of inquiry before questioning commenced. He asserts that the deceit requires suppression.

{¶38} That the police did not forewarn the defendant of the subject of inquiry is irrelevant to as whether a *Miranda* waiver is knowingly and voluntarily made. *United States v. Flowers*, 531 Fed. Appx 975, 983 (11th Cir.2013), citing *Colorado v. Spring*, 479 U.S. 564, 576, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). Moreover, while the voluntariness of a *Miranda* waiver and a confession are distinct issues, the same test is employed to decide both. *State v. Smith*, 2nd Dist. Montgomery Nos. 24264 and 24265, 2011-Ohio-3288, ¶20, quoting *State v. Treesh*, 90 Ohio St.3d 460, 2001-Ohio-4. Implicit in *Flowers* and *Spring* is that lack of prior notice of the subject of interrogation is not considered deception.

{¶39} Additionally, "'[c]oercive police activity is a necessary predicate to the finding that a confession is not "voluntarily" within the meaning of the Due Process Clause.'" *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶31, quoting *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). As there was no deception prior to appellant's questioning, his statements were made knowingly and voluntarily,

{¶40} Appellant's reliance upon *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977), is misplaced, as *Tweel* concerned an IRS agent who did not disclose that the

9

taxpayers were also the subjects of a criminal investigation by the Department of Justice.

{¶41} Appellant's third assignment is without merit.

{¶42} Under his last assignment, appellant submits that his convictions are against the manifest weight of the evidence. In raising this point, appellant merely reasserts the two arguments forming his first two assignments. He argues that the jury verdict is the result of confusion caused by flaws in the state's expert testimony and the indictment.

{¶43} In light of our conclusions under the first two assignments, this argument is unpersuasive. The state's expert witnesses did not merely restate the victim's version of the events or vouch for her credibility. Moreover, none of the charges against appellant are repetitive; each are based upon different acts.

{¶44} Appellant's convictions are primarily based upon the testimony of the victim and experts as well as the audiotape of appellant's statements to Detective Carney during his interview. The jury did not lose its way. *State v. Britta*, 11th Dist. Lake No. 2009-L-017, 2010-Ohio-971, ¶107. Appellant's fourth assignment is not well taken.

{¶45} The judgment of the Trumbull County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

10